Charles G. RODMAN, as Trustee of the Estate of W. T. Grant Company, Bankrupt, Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

No. 424, Docket 75–4214.

United States Court of Appeals, Second Circuit.

Argued Jan. 13, 1977.

Decided Feb. 3, 1977.

Martin D. Ginsburg, New York City (Weil, Gotshal & Manges, Harvey R. Miller, Peter Gruenberger, Harvey S. Berenson, Kenneth H. Heitner and Irwin H. Warren, New York City, of counsel), for petitioner-appellant.

Jonathan S. Cohen, Atty., Tax Div., Dept. of Justice, Washington, D. C. (Myron C. Baum, Acting Asst. Atty. Gen., Gilbert E. Andrews and Joseph L. Liegl, Attys., Tax Div., Dept. of Justice, Washington, D. C., of counsel), for respondent-appellee.

Before KAUFMAN, Chief Judge, and SMITH and MULLIGAN, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

Charles G. Rodman ("Rodman"), Trustee in bankruptcy of the Estate of W. T. Grant Company ("Grant"), appeals from a decision of the Tax Court, Charles R. Simpson, *Judge,* denying motion for further trial and entering judgment on computation in accordance with this court's opinion in *W. T. Grant Co. v. Commissioner,* 483 F.2d 1115 (2d Cir. 1973), *rehearing en banc denied; cert. denied,* 416 U.S. 937, 94 S.Ct. 1937, 40 L.Ed.2d 288 (1974). Appellant alleges that our prior decision rests on an erroneous legal analysis. He cites the intervening bankruptcy of Grant in April 1976, the advent of new counsel, and a substantial increase in the amount in controversy in later tax years as further grounds for reconsideration. We find no error in the analysis in our previous decision in this case and find none of the other factors advanced by appellant a compelling ground for departing from the law of the case doctrine. We affirm.

The facts and proceedings of this case have been summarized in our prior opinion, *id.* at 1116. On June 17, 1975, following remand from this court, the Tax Court assessed tax deficiencies against Grant for the years 1964 and 1965 of $2,773,786 and $3,336,501 respectively. This assessment was based on our holding that Grant could not report income from sales of merchandise under its coupon credit plan on the installment method provided in § 453 of the Internal Revenue Code of 1954 and Treasury Regulations issued thereunder because Grant had failed to maintain records of sales required to prove the extent to which such sales were actually paid for in installments.[1] Grant sought a new trial in the

---

1. Section 453 of the Internal Revenue Code and applicable Regulations provide in relevant part as follows:

   Internal Revenue Code of 1954 (26 U.S.C.):
   § 453. Installment method.
   (1) *In general.*—Under regulations prescribed by the Secretary or his delegate, a person who regularly sells or otherwise disposes of personal property on the installment plan may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the gross profit, realized or to be real-

   ized when payment is completed, bears to the total contract price.
   Treasury Regulations on Income Tax (26 C.F. R.):
   § 1.453–1 *Installment method of reporting income.*
   (a) *In general.* (1) Section 453 permits dealers in personal property, that is, persons who regularly sell or otherwise dispose of personal property on the installment plan, to elect to return the income from the sale or other disposition thereof on the installment method. To the extent provided in paragraph (d) of § 1.453–2, sales under a revolv-

Tax Court following remand. The Tax Court denied Grant's motion because it found that the new evidence sought to be introduced would not qualify the Grant coupon plan for installment reporting in the light of our earlier holding and assessed the deficiency.[2] This appeal followed.

■■■■ Once a rule of law has been established for a case we will not depart therefrom on a subsequent appeal unless special circumstances of the case warrant a reopening of issues previously decided. *United States v. Fernandez,* 506 F.2d 1200, 1203–04 (2d Cir. 1974); *Zdanok v. Glidden Co., Durkee Famous Foods,* 327 F.2d 944 (2d Cir. 1964). We find no circumstances in the case at bar which require a departure from the law of the case doctrine. Neither the intervening bankruptcy and the alleged resulting hardship to creditors nor the increased use of the coupon credit plan by Grant after 1965 with resulting increased tax liabilities constitutes a change in circumstances which, in the interest of justice, requires reconsideration of legal issues already decided on sufficient grounds. It may be noted that Grant and its creditors have been on notice since 1973, three years before the bankruptcy, that the coupon credit plan would not receive installment tax treatment in the absence of adequate records.

The Internal Revenue Code and Regulations issued thereunder permit installment reporting of income from sales under "traditional installment plans" meeting the definition of § 1.453–2(b)(1). They permit installment reporting of income under other, non-traditional installment plans only if records are kept, pursuant to § 1.453–2(d)(3), which establish whether or not a particular purchase was in fact paid for in two or more installments. Appellant Rodman concedes that Grant did not keep records required under § 1.453–2(d)(3), and that its coupon plan does not qualify as a traditional plan under § 1.453–2(b)(1). He argues that Grant's plan, although qualifying as a non-traditional installment plan under § 1.453–2(b)(2), is not a "revolving credit type plan" and hence not covered by § 1.453–2(d). Rodman contends that special ad hoc record-keeping requirements should be permitted for the Grant plan.

Appellant now claims that our previous decision, holding § 1.453–2(d) applicable to the Grant coupon plan, rested on an erroneous characterization of Grant's coupon plan as a "revolving credit plan." We disagree. Treasury Regulation § 1.453–2(d), entitled "Revolving credit plans," covers "cycle budget accounts, flexible budget accounts . . . and other similar plans . . . for the sale of personal property. . . ." The common feature of all such plans, shared by the Grant coupon plan, is that it is impossible to determine whether any particular sale is in fact paid for in two or

ing credit type plan will be treated as sales on the installment plan and the income from the sales so treated may be returned on the installment method. . . . A traditional installment plan usually has the following characteristics:

(i) The execution of a separate installment contract for each sale of personal property, and

(ii) The retention by the dealer of some type of security interest in such property. § 1.453–2

(b) *Definition of sale on the installment plan.* The term "sale on the installment plan" means—

(1) A sale of personal property by the taxpayer under any plan for the sale or other disposition of personal property, which plan, by its terms and conditions, contemplates that each sale under the plan will be paid for in two or more payments, or

(2) A sale of personal property by the taxpayer under any plan for the sale or other disposition of personal property—

(i) Which plan, by its terms and conditions, contemplates that such sale will be paid for in two or more payments, and

(ii) Which sale is in fact paid for in two or more payments.

Normally, a sale under a traditional installment plan (as described in paragraph (a)(1) of this section), meets the requirements of subparagraph (1) of this paragraph. See paragraph (d) of this section for the application of the requirements of subparagraph (2) of this paragraph to sales under revolving credit plans.

2. Tax Court Order, March 21, 1975; Tax Court Decision, June 17, 1975.

**1112**

more installments unless records for each sale are kept. A customer purchasing an item on the coupon plan could, for example, prepay the entire outstanding balance in a single payment, or such a customer could make one or more small purchases, all of which would be completely paid for by a single installment payment on the coupon plan. Under such non-traditional credit plans a percentage of charges may not be treated as installment sales, unless a taxpayer maintains records pursuant to Treas. Reg. §§ 1.453–2(d)(2), (3) which enable him to determine on the basis of a sample analysis, what percentage of sales are eligible for installment plan tax treatment. No such records were kept by appellant.

The previous decision of this court, denying installment tax treatment to the Grant coupon plan, rests on the specific characteristics of the Grant plan, in particular the inability under that plan to prove that sales were actually paid for in installments.

> The proof procedures provided in § 1.453–2(d) were designed to cover this situation—sales where a large number are expected to be paid and are paid in installments, but may also be and are in some cases paid in full.

*Id.* at 1119. The fact that the plan was referred to as a "revolving credit plan" by this court was irrelevant to the basis of our decision which rested on the particular features of the plan, not on reference to it as a revolving credit plan. We held that the record-keeping requirements of § 1.453–2(d) were applicable to the Grant plan. The relevant issues were considered by this court on the first appeal based on undisputed facts and the applicable law.[3] No material error is now pointed out in the facts then before the court or the law applied. We adhere to the ruling on the first appeal.

Affirmed.

**3.** Rodman now seeks to introduce evidence concerning treatment of other comparable credit plans by the IRS in support of his argu-

ment on appeal. We may not consider such evidence first offered at this stage.