UNITED STATES of America, Plaintiff-Appellee,

v.

Salvatore CIRAMI et al., Defendants,

Salvatore Cirami & Margaret Cirami, Defendants-Appellants.

No. 1057, Docket 77–6021.

United States Court of Appeals, Second Circuit.

Argued May 5, 1977.

Decided Sept. 1, 1977.

**30.** See note 4, supra. Of course, we express no view on the merits of that petition.

David English Carmack, Atty., Tax Div., Dept. of Justice, Washington, D. C. (Myron C. Baum, Acting Asst. Atty. Gen., Gilbert E. Andrews, Gary R. Allen, Attys., Tax Div., Dept. of Justice, Washington, D. C., David G. Trager, U. S. Atty., E.D.N.Y., Brooklyn, N. Y., of counsel), for plaintiff-appellee.

Wallace Musoff, New York City (Wagman, Cannon, Musoff & Gallop, P. C., New York City, Barry D. Gordon, New York City, of counsel), for defendants-appellants.

Before WATERMAN and GURFEIN, Circuit Judges, and BLUMENFELD,* District Judge.

WATERMAN, Circuit Judge:

Salvatore and Margaret Cirami appeal from an order denying their second motion, made pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure, to vacate a final judgment of the United States District Court for the Eastern District of New York entered against them in a suit for unpaid taxes. The precise nature of the government's tax claim is set forth in our earlier opinion in this case affirming the denial of the Ciramis' first Rule 60(b) motion, *United States v. Cirami,* 535 F.2d 736 (2d Cir. 1976).

For the purposes of this opinion, we take the facts to be as the Ciramis allege, for all we are to do on this appeal is determine whether those allegations, if proved, would justify relief. *United States v. Karahalias,* 205 F.2d 331, 333 (2d Cir. 1953). We believe the Ciramis have now alleged a set of "exceptional circumstances," *Rinieri v. News Syndicate Co.,* 385 F.2d 818, 822 (2d Cir. 1967), resulting in a "situa-

* Of the United States District Court for the District of Connecticut, sitting by designation.

tion of extreme hardship" to them. *United States v. Karahalias, supra.* Because it would be "appropriate to accomplish justice," *Klapprott v. United States,* 335 U.S. 601, 614–15, 69 S.Ct. 384, 93 L.Ed. 266, *judgment modified,* 336 U.S. 942, 69 S.Ct. 398, 93 L.Ed. 1099 (1949), we hold that these allegations, if proved, would justify Rule 60(b)(6) relief.

## I.

The underlying action was commenced in the Eastern District of New York in February 1973 against the Ciramis, their son James, and others, pursuant to § 7401 of the Internal Revenue Code of 1954, to reduce to judgment certain federal income tax assessments against Salvatore and Margaret,[1] to set aside as fraudulent a conveyance of real property to their son James, and for other relief. The Ciramis were represented by an attorney, one Newman, who filed on their behalf a brief answer generally denying the government's allegations, asserting that the complaint failed to state a claim upon which relief could be granted, and asserting a counterclaim for "$10,000.00 in taxes illegally and erroneously collected."[2]

In December 1973 the government moved before the late Judge Walter Bruchhausen for summary judgment solely on the claim involving the tax assessments then outstanding against Salvatore and Margaret Cirami.[3] No opposition to this motion was filed on the Ciramis' behalf. By order of March 18, 1974, Judge Bruchhausen granted the government's motion "[t]here being no opposition."[4] On June 12, 1974, final judgment for almost $271,000 was entered against the Ciramis, the judgment itself reciting that the motion for the summary judgment had not been opposed.

In late August 1974 the Ciramis replaced Newman as their counsel. On October 4, 1974, the government was advised that the law firm of Wagman Cannon & Musoff ("Musoff") was now representing Margaret and James Cirami and that one Carl N. Mione was now representing Salvatore. Musoff filed a notice of appearance on December 23, 1974.

On May 1, 1975, Salvatore and Margaret, pursuant to Rule 60(b)(6), Fed.R.Civ.P., filed a motion to vacate the June 12, 1974 judgment. By affidavit Salvatore asserted that he had not learned of the entry of summary judgment on the tax assessment claim against him and his wife until after he had retained new counsel to replace Newman. In support of their motion, Salvatore and Margaret submitted extensive evidence relative to the merits of the underlying tax claim but submitted no evidence of any circumstances pertaining to their failure to respond to the government's motion for summary judgment on the tax assessment claim. On October 6, 1974, Judge Bruchhausen denied this motion to vacate the summary judgment on the grounds that Salvatore and Margaret had not shown the "extraordinary circumstances" required by Rule 60(b)(6), and had not made their motion within a reasonable time as required by the rule. He also noted that the Ciramis had not shown a meritorious defense to the tax assessments.

---

1. The government sought $200,306.15 in taxes, penalties and interest assessed in 1967 for the years 1961, 1962 and 1963, plus interest, which, by December 1973, exceeded $68,000.

2. This counterclaim was dismissed on October 2, 1973, after the Ciramis filed, through Newman, a brief and affidavit in opposition to the government's motion to dismiss the counterclaim.

3. The government's motion was denominated a motion for "partial summary judgment," presumably because the motion "only sought to reduce to judgment the tax assessments against the senior Ciramis, and did not seek to

set aside the alleged fraudulent conveyances or to obtain judgment against the Ciramis' son." *United States v. Cirami,* 535 F.2d at 737 n.3.

4. Inasmuch as Judge Bruchhausen's order "adjudicate[d] fewer than all the claims," Fed.R. Civ.P. 54(b), and "the rights and liabilities of fewer than all the parties," *id.,* the order could constitute a final judgment only if the judge, in accordance with the requirements of Fed.R. Civ.P. 54(b) reached "an express determination that there [was] no just reason for delay and [made] an express direction for the entry of judgment." This Judge Bruchhausen did.

Salvatore and Margaret appealed. On May 10, 1976, we affirmed, *United States v. Cirami*, 535 F.2d 736 (2d Cir. 1976), observing that (1) the only exceptional circumstance relied upon by Salvatore and Margaret in support of their motion to vacate was the circumstance that their attorney Newman had allowed the entry of summary judgment by default against his clients for "unknown" reasons; (2) Salvatore and Margaret and their new attorneys had failed either to obtain an affidavit from Newman explaining his default or to indicate any efforts which they had taken to obtain Newman's testimony; and (3) there was no indication of any efforts by Salvatore, "an experienced businessman," or Margaret to determine the status of the tax assessment or of the lawsuit against them or of the activity of Newman.[5] Noting that a Rule 60(b)(6) motion is addressed to the discretion of the district court judge, we stated that under the circumstances, we could not find an abuse of discretion:

> On the record before us we are totally uninformed of the reasons for the failure of the appellants' former counsel to contest the motion for summary judgment or whether the failure was deliberate or inadvertent.

535 F.2d at 739. We went on to note that we have

> rather consistently refused to relieve a client of the burdens of a final judgment entered against him due to the mistake or omission of his attorney by reason of the latter's ignorance of the law or of the rules of the court, or his inability to efficiently manage his caseload.

*Id.* at 739. While declining to hold that gross negligence of an attorney would provide a basis for Rule 60(b)(6) relief, we stated that even if it did,

> the record before us fails to establish any gross negligence or misleading of the appellants by counsel and is bereft of any indication of client diligence.

*Id.* at 741. Finally, we reiterated that the movant under Rule 60(b)(6) must show "ex-

ceptional circumstances" or "extreme hardship." 535 F.2d at 741. As we have said, the Ciramis needed to do more than to argue the merits of their tax case:

> The argument that their cause has merit is plausible but is not determinative. It is well established that an appeal from the denial of a Rule 60(b) motion "brings up only the denial of the motion and not the [merits of the underlying] judgment itself." *Wagner v. United States*, 316 F.2d 871, 872 (2d Cir. 1963).

The Ciramis timely petitioned to us for rehearing. In their petition they pointed out that, upon a remand for an evidentiary hearing with respect to their "voluminous" tax records, Newman's "presence can be compelled so that his role can be fully delineated." The petition was denied on June 1, 1976.

Following this denial Salvatore and Margaret (hereinafter "appellants"), by motion dated July 28, 1976, again sought, pursuant to Rule 60(b)(6), to vacate the June 12, 1974 summary judgment on the tax assessment claim. This time, they set forth in some detail in various affidavits "newly discovered evidence concerning the reason prior counsel [Newman] failed to oppose the government's motion for summary judgment." They stated the reason they had originally submitted no argument concerning Newman's default was "not of [their] volition," but because neither they nor their new counsel had succeeded in meeting with Newman, and, therefore, they could only say at that time that any explanation of Newman's default was "unknown" to them.

After our May 10, 1976 decision, appellants' new counsel, Musoff, informed Newman of our opinion and that Newman was mentioned by name. Newman then agreed to meet with Musoff. At the meeting some two weeks later, Newman stated that he had defaulted because of assurances given him by the Justice Department in Washington that the government would seek only the actual tax due and would not seek

---

5. In addition, we rejected the government's contention that the Ciramis' motion, filed al-

most a year after the entry of judgment, was untimely. 535 F.2d at 742.

interest. Pressed by Musoff, Newman promised to supply particulars and also stated that he was the subject of Bar Association charges.

Newman and Musoff met again on June 8, 1976, at which time Newman admitted—for the first time, appellants allege—that he defaulted because of his suffering from a mental disorder during the time the motion for summary judgment was made, which disorder manifested itself in his failure to complete work promised to his clients and that he was seeing a psychiatrist during this period, and that the Bar Association charges against him involved his inability to complete required work. Newman's affidavit to this effect was included in appellants' new July 28 motion papers, Newman stating that he was undergoing psychoanalysis during 1972 and 1973. Also attached to appellants' motion was a letter from a psychologist confirming that Newman was being treated from October 1969 through September 1971.

Appellants also included, for the first time, affidavits from Salvatore Cirami, Musoff, an associate of Musoff's, and Cirami's accountant DeStefano, setting forth in some detail their repeated efforts to contact Newman, and detailing Cirami's concern that this matter was going unattended.

With their papers appellants submitted for the first time a government Memorandum to Files, which they had obtained under the Freedom of Information Act. The memorandum, which was written on March 19, 1974, by William Morrow, the Justice Department attorney handling the Cirami tax litigation, stated that Morrow was present in Judge Bruchhausen's chambers on two occasions when the judge's law secretary, Mr. Pellegrino, called Newman to inquire why he had defaulted. According to the memorandum, on March 15, 1974,

> Mr. Pellegrino said that [Judge Bruchhausen] was aware that the attorney Newman had defaulted in opposing our motion for partial summary judgment on February 1, 1974, that the Court gave Mr. Newman an additional two weeks to file such opposition and that he had again

defaulted. Mr. Pellegrino then called Mr. Newman's law office but could not get a satisfactory answer as to the second default.

And again, three days later, according to the memorandum, Pellegrino tried to reach Newman but spoke only to Newman's secretary who "advised Mr. Pellegrino that no papers had been prepared on the Cirami matter within the last three months." Appellants contend that this "new evidence," unknown to them when they filed their first motion, confirms their inability to contact Newman.

The government opposed appellants' motion on three grounds, which it also urges on this appeal: (1) grossly negligent conduct of counsel is not a ground for Rule 60(b)(6) relief; (2) "law of the case" precludes consideration of the motion; and (3) appellants' motion was not timely made. The government also submitted an affidavit from the same William Morrow, which describes Newman's continued participation in the action until the spring of 1974, and sets forth numerous contacts Morrow had with Newman personally during the times at issue.

In a brief order filed December 27, 1976, Judge Platt, to whom the case was assigned following Judge Bruchhausen's death, denied appellants' motion:

> The Court finds it is precluded from considering this second motion to vacate in light of the fact that the United States Court of Appeals for the Second Circuit has affirmed the United States District Court's decision denying defendants' first motion to vacate. (*United States v. Cirami,* 535 F.2d 736 (C.A. 2, 1976).) The Court is precluded from considering defendants' second motion to vacate on the basis of new evidence unless authorized to do so by the United States Court of Appeals for the Second Circuit. *United States v. Fernandez,* 506 F.2d 1200 (C.A. 2, 1974). Insofar as the United States Court of Appeals for the Second Circuit has not authorized this Court to consider

**32**

this second motion, defendants' motion to vacate is accordingly denied.

This appeal followed.

We reverse and remand to the district court to consider the Ciramis' new evidence.

## II.

Rule 60(b) of the Federal Rules of Civil Procedure provides in part:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence . . .; (3) fraud . . ., misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, . . .; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment order, or proceeding was entered or taken.

■ Clause (6), the basis for the motion before us, has been described by Professor Moore as "a grand reservoir of equitable power to do justice in a particular case when relief is not warranted by the preceding clauses," 7 *Moore's Federal Practice* ¶ 60.27[2], at 375 (2d ed.rev.1975), which, in a proper case, is to be "liberally applied." *Id.* at 352. It is well established, however, that a "proper case" for Rule 60(b)(6) relief is only one of "extraordinary circumstances," *Ackermann v. United States,* 340 U.S. 193, 199, 71 S.Ct. 209, 95 L.Ed. 207 (1950), or "extreme hardship," *United States v. Karahalias, supra,* 205 F.2d at 333.

■ As the language of the rule makes clear, relief under clause (6) is available only when the movant acts in a timely fashion and asserts a ground justifying relief that is not a ground encompassed within any of the first five clauses. While all motions made pursuant to Rule 60(b) must be brought "within a reasonable time," the rule specifies that those falling under the first three clauses must, in addition, be brought within a year of the entry of the challenged judgment. Thus, when the reason asserted for relief comes properly within one of those clauses, clause (6) may not be employed to avoid the one-year limitation.

■ The motion at issue on this appeal was made slightly more than two years after summary judgment on the tax assessment claim was entered against the Ciramis. We have examined the motion and the grounds advanced in support of it, and we conclude that those grounds do not come within the scope of the first five clauses of Rule 60(b), but, indeed, constitute an "other reason justifying relief," and the motion is thus not subject to a one-year time limit. Moreover, we believe it to have been made within a reasonable time.

■ In our earlier *Cirami* opinion, we found the Ciramis' first Rule 60(b)(6) motion timely. 535 F.2d at 742. That opinion was filed on May 10, 1976. The instant motion was dated July 28, 1976. The Ciramis have alleged that it was only by virtue of our opinion that they were able at last to meet with Newman and learn the reason for his behavior and default. They filed their new motion just two and one-half months after our decision was handed down. What is a "reasonable time" is a question to be answered in light of all the circumstances of the case. So viewed here, we find that the second motion was timely.

■ The government's reliance on the doctrine of law of the case is misplaced. The court below was not precluded from considering the new evidence offered by appellants. When an appellate court has once decided an issue, the trial court, at a later stage in the litigation, is under a duty to follow the appellate court's ruling on that issue, *see Munro v. Post,* 102 F.2d 686, 688 (2d Cir. 1939), and is precluded from altering the appellate decision. *United States v. Fernandez,* 506 F.2d 1200, 1202–03 (2d Cir. 1974); 1B *Moore's Federal Practice* ¶ 0.404[10] (2d ed.rev.1974). This is what is

meant by "law of the case."[6] However, from the proposition that the trial court must adhere to the decision and mandate of the appellate court there is the corollary that upon remand the trial court may consider matters not expressly or implicitly part of the decision of the court of appeals. *Gulf Coast Building & Supply Co. v. International Bhd. of Electrical Workers, Local No. 480,* 460 F.2d 105, 107 (5th Cir. 1972). This is true also at a later stage in the litigation where the case is again before the trial court not on remand but, for example, on a new motion to vacate the judgment.

In our earlier decision in this case, we did not hold that Rule 60(b) relief was under no circumstances available to the Ciramis. Rather, we held that the arguments there urged by the Ciramis were quite insufficient to justify the relief they sought, in that we were "totally uninformed of the reasons" for their default. 535 F.2d at 739. The papers now submitted constitute a new motion and seek both to remedy that deficiency and to explain its cause. In affirming the denial of the Ciramis' first motion to vacate, we did not pass on the contentions in the second motion, for they were not before us. Thus, consideration of them by the district court would not have been improper.

Very high among the interests in our jurisprudential system is that of finality of judgments. It has become almost a judicial commonplace to say that litigation must end somewhere, and we reiterate our firm belief that courts should not encourage the reopening of final judgments or casually permit the relitigation of litigated issues out of a friendliness to claims of unfortunate failures to put in one's best case. Yet, at the same time, we are not unmindful of other interests, among them the interest of deciding cases on their merits. These interests provide relevant parameters within which to evaluate Rule 60(b) motions; the facts give them values. Here we are faced with a *second* motion to vacate a final judgment. Most assuredly, for it to succeed the material offered in support of it must be highly convincing material. Here, after a thorough study of the record we have concluded that, if the facts are as the Ciramis allege them to be, Rule 60(b)(6) relief would be appropriate.

In an affidavit submitted with his second motion, Salvatore Cirami stated that he had tried "[o]n several occasions . . . to contact Mr. Newman as to the status of my case. At no time was I able to speak with him." He then contacted his accountant, Louis DeStefano, who knew Newman and had recommended Newman to Salvatore, and asked DeStefano to contact him "to find out what was going on in the defense of this action." According to DeStefano, "I then called Mr. Newman who assured me that everything was being taken care of and I relayed this message to Mr. Cirami." Thereafter, Salvatore called DeStefano three or four times a week "each and every week for approximately the next six months" to inquire about the case, and each time DeStefano assured him that "this case was being handled properly by Mr. Newman who gave me these assurances constantly." Both Cirami and DeStefano contend that they never had any reason to believe that anything was amiss in Newman's handling of the case. DeStefano stated in his affidavit:

> . . . Mr. Cirami was my client; it was I who disputed the tax deficiency from the Internal Revenue Service; I had the necessary information and accounting records to dispute the accuracy and validity of the Internal Revenue Service claims; . . . I am the party who

---

**6.** Another aspect of the doctrine concerns the adherence by an appellate court to its own decision at an earlier stage of the litigation:

> Once a rule of law has been established for a case we will not depart therefrom on a subsequent appeal unless special circumstances of the case warrant a reopening of issues previously decided.

*Rodman v. Commissioner,* 548 F.2d 1109, 1111 (2d Cir. 1977), *petition for cert. filed,* 45 U.S. L.W. 3733 (U.S. Apr. 28, 1977) (No. 76–1499). While this is not the issue squarely before us, we believe that in light of the newly submitted material there are sufficient special circumstances here to warrant our reconsideration.

recommended Mr. . . . Newman as the lawyer whom I believed best suited to handle this case for the defendants; I am the party who was working with and collaborating with Mr. Newman to prepare the defense; . . . and any delays of weeks or months in a tax case of this nature is not and has never been any unusual situation.

Thus, according to the Ciramis, Salvatore was frequently inquiring about the status of his lawsuit and was met on each occasion by assurances from his attorney, relayed by his accountant, that the matter was in hand. It was only after a judgment in default had been entered against them that they discovered that their attorney had not, in fact, been representing them. New counsel, Musoff, was retained, but efforts to learn from Newman the reasons for his inaction continued to be unavailing. Only after this court, in affirming the denial of the Ciramis' first motion to vacate the judgment, mentioned Newman by name did he finally consent to speak with the Ciramis' new attorney. This allegedly led to the discovery of the reason for Newman's failure to oppose the government's motion for summary judgment on the tax assessment claim—a mental disorder which induced him both to neglect his duties and to assure his client that he was attending to them.

This tale is indeed an extraordinary one, and, additionally, it is disturbing to learn, as set forth in the Morrow memorandum, that the government knew before its motion for summary judgment on the tax assessment claim was granted, that even Judge Bruchhausen, before whom the action was pending, was unable to reach Newman. Moreover, both Salvatore Cirami and his accountant DeStefano assert they knew nothing of the government's motion for summary judgment on the tax assessment claim against the elder Ciramis until some time after that motion was granted.[7]

In *Vindigni v. Meyer,* 441 F.2d 376 (2d Cir. 1971), relief was justifiable where there was "the unusual fact of the complete disappearance of plaintiff's attorney." *Id.* at 377. In the present case we have the possibly unique fact of what we may term the "constructive disappearance" of defendants' attorney, who was allegedly suffering from a psychological disorder which led him to neglect almost completely his clients' business while at the same time assuring them that he was attending to it, and who had made himself unavailable even to the trial judge.

It is this behavior of Newman which in part sets this case apart from *Link v. Wabash Railroad Co.,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962). In *Link,* which was not a Rule 60(b) case, the Supreme Court, by a vote of four to three, affirmed the district court's *sua sponte* dismissal of a diversity negligence action for failure to prosecute. Justice Harlan, writing for the Court, found that:

> There is certainly no merit to the contention that dismissal of petitioner's claim because of the counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have "notice of all facts, notice of which can be charged upon the attorney." *Smith v. Ayer,* 101 U.S. 320, 326, 25 L.Ed. 955.

370 U.S. at 633–34, 82 S.Ct. at 1390. But the Court noted that there was nothing "to indicate that counsel's failure to attend the pretrial conference was other than deliberate or the product of neglect." *Id.* at 636, 82 S.Ct. at 1391. Such was not the case here. Newman's default was not the result of his having taken on too many cases to give proper attention to this one (*see Schwarz v. United States,* 384 F.2d 833, 836 (2d Cir. 1967); *Cline v. Hoogland,* 518 F.2d

---

**7.** The Memorandum and Order granting the government's motion for summary judgment

stated that "[c]opies hereof are being forwarded to the attorneys for the respective parties."

776, 778 (8th Cir. 1975)); but instead was engendered by a mental illness which manifested itself to his clients only after they had relied on him for months.

█ As to the conduct of the Ciramis, they allege reasonable attempts by them and others on their behalf, as well as attempts by Judge Bruchhausen, to contact Newman. We note incidentally that on the papers before us these Rule 60(b) movants do not appear to have been themselves neglectful. If they had been, their motion would be cognizable not under Rule 60(b)(6) but under Rule 60(b)(1). Certainly, their conduct is not explainable as "inadvertence, indifference, or careless disregard of consequences," *Klapprott v. United States, supra,* 335 U.S. at 613, 69 S.Ct. at 389; quite the contrary, their "allegations set up an extraordinary situation which cannot fairly or logically be classified as mere neglect on [their] part." *Id.* And *cf. L. P. Steuart, Inc. v. Matthews,* 117 U.S.App.D.C. 279, 280, 329 F.2d 234, 235 (D.C.Cir. 1964), where a successful Rule 60(b)(6) movant, whose former counsel filed an affidavit that he had been "beset with personal problems," "made affidavit that he [movant] and others in his behalf, made 'numerous inquiries of' his former counsel who 'refused to answer such inquiries' and assured [movant] 'from time to time' that 'the case was proceeding and that settlement of it would be made soon.'"

While we do not, of course, pass upon the merits of the defenses asserted by the Ciramis to the underlying tax assessments against them, we do observe that their submissions, if established at trial, could well result in a substantial reduction of the amount of tax and interest claimed by the government and awarded in full by Judge Bruchhausen in granting summary judgment on the tax assessment claim, thereby considerably ameliorating what the Ciramis have sought to show is a most severe financial blow to them.

█ Where one timely seeking Rule 60(b)(6) relief from a default judgment can make out a strong case that he had a meritorious defense which could have been as-

serted but for a truly extraordinary turn of events not covered by the first five clauses of the rule and which brought about his default and resulted in substantial injustice to him, it is appropriate to vacate the judgment so that the merits of his case can be considered.

The order of the district court is reversed. The case is remanded for an evidentiary hearing on the allegations made in support of the motion.