IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 24, 2001 Session

## ANNIE L. TRUETT, AS ADMINISTRATRIX OF THE ESTATE OF GLENDA F. PLUNK, AND MARVIN PLUNK v. WAYNE BOWMAN, CRNA, ET AL.

**An Interlocutory Appeal from the Circuit Court for Madison County**
**No. C96-138    Roy Morgan, Jr., Judge**

_____

**No. W2000-00514-COA-R9-CV - Filed February 15, 2002**

_____

This is a medical malpractice case. The plaintiff's decedent allegedly was improperly intubated in preparation for hip replacement surgery. The plaintiff sued the orthopedic surgeon, the nurse anesthetist, and two anesthesiologists involved in the surgery. The trial court entered summary judgment in favor of the surgeon, based in part on the assertion of the surgeon and his attorney that the surgeon was responsible only for the orthopedic aspect of the decedent's care. Two years later, the other defendants, also represented by the same attorney who represented the surgeon, testified in depositions that, in contrast to the surgeon's assertions, the surgeon had broad responsibility for the decedent's care. In light of this testimony, the trial court granted the plaintiff's motion to set aside the order of summary judgment in favor of the surgeon. The surgeon's request for interlocutory appeal of this decision was granted. We now affirm, finding that the trial court did not abuse its discretion in setting aside its previous order of summary judgment.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Circuit Court is Affirmed**

HOLLY KIRBY LILLARD, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID G. HAYES, SP.J., joined.

Marty R. Phillips, Jackson, Tennessee, for the appellant, James T. Craig, Jr., M.D.

Michael L. Weinman, Henderson, Tennessee, Thomas J. Long, Memphis, Tennessee, for the appellees, Annie L. Truett, as Administratrix of the Estate of Glenda F. Plunk, and Marvin Plunk.

**OPINION**

This is a medical malpractice case. Glenda F. Plunk ("Plunk") underwent hip replacement surgery performed by appellant James T. Craig, Jr., M.D. ("Dr. Craig"), an orthopedic surgeon, on April 18, 1995, at Jackson Madison County General Hospital. In preparation for Plunk's surgery, Wayne Bowman ("Bowman"), a certified registered nurse anesthetist, performed a throat intubation procedure on her. Immediately after surgery, Plunk began experiencing problems swallowing and

breathing, caused by a hole in her esophagus, approximately the size of a quarter, allegedly resulting from the intubation procedure. On April 22, 1995, while in recovery, Plunk went into full cardiac arrest. She continued to endure complications related to the intubation until her death about four years after surgery.[1]

On April 17, 1996, Plunk and her husband, Melvin Plunk, sued Bowman and Dr. Craig,[2] alleging medical malpractice. On August 16, 1996, the plaintiffs filed a motion to amend their complaint to include as defendants Edward Hockaday, M.D.("Dr. Hockaday"), and Barton O'Brien, M.D. ("Dr. O'Brien"), anesthesiologists who participated in Plunk's surgery. On June 27, 1997, those defendants were added by agreement of the parties. Bowman, Dr. Craig, Dr. Hockaday, and Dr. O'Brien were all represented by the same attorney, who continued to represent Dr. Craig in this appeal.

This case has a complex procedural history. On October 16, 1996, Dr. Craig filed a motion for summary judgment. On November 26, 1996, plaintiffs filed a subpoena *duces tecum* in an attempt to take the depositions of defendants Bowman and Dr. Craig. Soon thereafter, the defendants filed a motion to quash the subpoena. Although the case was assigned to Circuit Judge Whit Lafon, a hearing on the motion to quash was heard on December 3, 1996, by Chancellor Joe C. Morris, sitting by interchange. Chancellor Morris granted the defendants' motion to quash the subpoena, based on unspecified procedural defects.

On December 13, 1996, Judge Lafon conducted a hearing on Dr. Craig's motion for summary judgment. At that hearing, counsel for Dr. Craig argued that Dr. Craig was entitled to summary judgment because the injury occurred in the course of the anesthesia, and that Dr. Craig, as an orthopedic surgeon, had no responsibility for the anesthesia. The following colloquy took place:

> [DEFENSE COUNSEL]: Right. This is a medical malpractice case. I represent Mr. Bowman, Dr. Craig and the Jackson Clinic Professional Association. . . .
>     The allegation of malpractice in this case revolves around an injury that supposedly occurred during anesthesia. . . .
>     Now, Mr. Bowman is a Certified Registered Nurse Anesthetist. He was to provide the anesthesia. Dr. Craig is an orthopaedic surgeon, and he had nothing whatsoever to do with the anesthesia and this, in fact, is a case about an anesthesia injury.
> THE COURT: Well, now, do you represent Bowman?
> [DEFENSE COUNSEL]: Yes, sir, Bowman, Craig and the Clinic.
> THE COURT: You say, in other words, between Bowman and Craig, if somebody did it, it was Bowman and not Craig?

---

[1] Plunk died during the pendency of this lawsuit, and Annie L. Truett, the administratrix of her estate, was substituted as a plaintiff. We refer to Truett and Mr. Plunk collectively as "plaintiffs."

[2] The plaintiffs also sued Dr. John Doe, the Jackson Clinic, P.A., and the Jackson Madison County General Hospital District, but those defendants were dismissed and are not involved in this appeal.

[DEFENSE COUNSEL]: Craig had nothing to do with it, that's right.

Counsel for Dr. Craig argued that there was no expert proof that Dr. Craig's care fell below the standard of care applicable to him. Counsel for the plaintiffs noted that the plaintiffs needed to conduct discovery "because we have not had the opportunity to find out what Dr. Craig's role in this medical malpractice was. Dr. Craig could have been the supervising physician who was totally responsible for all of nurse Bowman's responsibilities." Counsel for the plaintiffs then asked the trial court for additional time to conduct discovery. The trial judge responded by stating that the plaintiffs could depose Dr. Craig, and that the defendants could depose the plaintiffs. Counsel for the defendants protested:

> [DEFENSE COUNSEL]: Your Honor, if I could address just the narrow issue of Dr. Craig. He has filed the affidavit with the Court saying he had nothing to do with the anesthesia. The medical records - -
> THE COURT: I'll take that under advisement and allow them to take his deposition. I'll take your motion about Dr. Craig under advisement.
> [DEFENSE COUNSEL]: And hold him in the lawsuit even though he wasn't even in the operating room?
> THE COURT: Well, all he's got to do, when he gets in there, is just say he wasn't in the operating room, and that's what they'll discover.

On January 7, 1997, the plaintiffs deposed Dr. Craig. At his deposition, Dr. Craig testified that, at the time of Plunk's surgery, he was the admitting and attending physician. However, Dr. Craig maintained that he was responsible only for her orthopedic care. Drs. Hockaday and O'Brien were present at Dr. Craig's deposition, although they had not yet been made defendants in the lawsuit. Dr. Craig's attorney confirmed to plaintiffs' counsel that he intended to represent Drs. Hockaday and O'Brien in the event that they were brought into the lawsuit. The plaintiffs attempted to schedule the depositions of Dr. Hockaday and Dr. O'Brien, but defense counsel resisted, asserting that such discovery should not be permitted until Drs. Hockaday and O'Brien had been made parties, in order to save "needless expenses of money and time on behalf of two physicians who may not even be parties to this lawsuit." The plaintiffs did not file a motion to compel the depositions of Dr. Hockaday, Dr. O'Brien, or anyone else.

In response to Dr. Craig's motion for summary judgment, the plaintiffs submitted the affidavit of James H. Shull, M.D. ("Dr. Shull"), a general surgeon. Dr. Shull's affidavit stated that Dr. Craig, as Plunk's admitting surgeon, was the physician responsible for her post-operative care. Dr. Shull asserted that Dr. Craig's conduct fell below the standard of care in that he "fail[ed] to recognize and/or appreciate the significance of Glenda Plunk's complaints of nausea, throat, and throat related complaints," particularly during his post-operative visits on April 19, 20, and 21. Dr. Shull concluded that Dr. Craig's post-operative conduct caused or contributed to Plunk's rapid decline which resulted in full cardiac arrest on April 22, 1995.

On July 27, 1997, Judge Lafon held a second hearing on Dr. Craig's motion for summary judgment. At that time, Drs. Hockaday and O'Brien were added as defendants by consent of the

parties. The plaintiffs' attorney had filed a motion to disqualify defense counsel, now representing Dr. Craig, Bowman, Dr. Hockaday. and Dr. O'Brien. This motion was withdrawn with the understanding that, if a conflict arose, the defendants would bear the expense of any discovery that had to be redone.

With respect to Dr. Craig's motion for summary judgment, counsel for Dr. Craig again asserted that Dr. Craig did not have responsibility beyond Plunk's orthopedic care. Judge Lafon granted Dr. Craig's motion for summary judgment. In the hearing, Judge Lafon indicated that he granted the motion in part because Dr. Shull was only a general surgeon, not an orthopedic surgeon, and Dr. Shull's affidavit included no comments regarding proper orthopedic standards. For that reason, Judge Lafon held that Dr. Shull's affidavit failed to meet the requirements of Tennessee Code Annotated § 29-16-115. Thus, the trial court held that the plaintiffs had submitted insufficient proof to create a genuine issue of fact regarding whether Dr. Craig violated the applicable standard of care in his treatment of Plunk. An order consistent with Judge Lafon's oral ruling was entered on July 17, 1997. Upon the request of Dr. Craig's attorney, the trial court made the order in favor of Dr. Craig final and appealable pursuant to Tennessee Rule of Civil Procedure 54.02. Though the plaintiffs initially appealed the summary judgment in favor of Dr. Craig, they withdrew their appeal prior to oral argument, for reasons not apparent in the record.

Almost two years later, in May of 1999, the plaintiffs took the depositions of Bowman and Dr. Hockaday. In their depositions, both Bowman and Dr. Hockaday testified that Dr. Craig, as the admitting surgeon, shared responsibility for Plunk's post-surgical care. Bowman asserted that "there was no doubt" that Dr. Craig knew about the difficulty Bowman had experienced while intubating Mrs. Plunk, and that Dr. Craig never notified him about complications resulting from her intubation. Dr. Hockaday testified that, once the patient was transferred out of surgery, it was the duty of the attending physician, *i.e.*, Dr. Craig, to notify the anesthesia staff about any complications arising from anesthesia care, such as the complications from Plunk's intubation. Thus, the positions taken by Bowman and Dr. Hockaday in their depositions were directly contrary to the testimony of Dr. Craig, as well as the position taken on behalf of Dr. Craig by his attorney at the hearings before the trial court on Dr. Craig's motion for summary judgment. This was the same attorney who, at the time of the hearings, represented Bowman and Dr. Hockaday.

On June 18, 1999, the plaintiffs moved to set aside the order granting summary judgment to Dr. Craig pursuant to Tennessee Rule of Civil Procedure 60.02 ("Rule 60.02").[3] At that point, Judge

---

[3] Tennessee Rule of Civil Procedure 60.02 reads in pertinent part:

On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective application; or (5) any other reason justifying relief from the operation of the judgment.

(continued...)

Lafon was no longer on the bench, and the motion was heard by Judge Roy B. Morgan, Jr. In the plaintiffs' motion to set aside the order of summary judgment, counsel for the plaintiffs argued that the collaborative efforts of the defendants in this case had the appearance of an attempt to undermine the fair administration of justice. The plaintiffs' attorney asserted that defense counsel did not allow him to take the depositions of the other defendants prior to the trial court's ruling on Dr. Craig's motion for summary judgment. Consequently, the plaintiffs' counsel maintained, he was denied the opportunity to ask the other defendants who was responsible for Plunk's care during the critical time frame. Counsel for the plaintiffs argued that Judge Lafon relied on the representations of Dr. Craig's attorney, as the legal representative of all of the defendants, in finding that Dr. Craig was responsible only for Plunk's orthopedic care. Had the trial court been made aware that the other defendants would take a position directly contrary to Dr. Craig's position, the plaintiffs claimed, Judge Lafon would not have dismissed Dr. Craig from the lawsuit. Under these circumstances, they argued, relief from the final judgment, pursuant to Rule 60.02, was justified.

Dr. Craig argued that the evidence on which the plaintiffs rely – the depositions of his codefendants – could have been obtained by the plaintiffs prior to the trial court's decision on Dr. Craig's motion for summary judgment. Dr. Craig maintained that the plaintiffs failed to request to depose the codefendants prior to the trial court's decision on Dr. Craig's motion for summary judgment. For that reason, Dr. Craig argued, extraordinary circumstances do not exist to justify relief under Rule 60.02.

Judge Morgan granted the plaintiffs' motion, relying on subsections (4) and (5) of Rule 60.02. Judge Morgan observed that the defendants were all represented by the same counsel and that the representations of Dr. Craig and his attorney were directly contrary to the positions of Bowman and Dr. Hockaday. Judge Morgan noted that Judge Lafon, in granting Dr. Craig's motion for summary judgment, had relied on the representations that Dr. Craig was responsible only for Pluck's orthopedic care. Based on the later testimony indicating that Bowman and Dr. Hockaday placed partial blame on Dr. Craig, Judge Morgan set aside the order granting summary judgment because these were "existing extraordinary circumstances which justify the relief sought by Plaintiffs." Dr. Craig applied to the trial court under Rule 9 of the Tennessee Rules of Appellate Procedure for permission to seek an interlocutory appeal to this Court, which was granted. This Court granted permission for interlocutory review.

The trial court's decision to grant or deny relief under Rule 60.02 is reviewed under an abuse of discretion standard. *See Day v. Day*, 931 S.W.2d 936, 939 (Tenn. Ct. App. 1996). In *State ex rel. Jones v. Looper*, No. M1999-00662-COA-R3-CV, 2000 Tenn. App. LEXIS 233 (Tenn. Ct. App. April 7, 2000), this Court addressed the burden facing a party who seeks, on appeal, to reverse a decision that lies within the discretion of the trial court:

---

[3](...continued)

The motion shall be made within a reasonable time. . . .

A party seeking to have a lower court's holding overturned on the basis of abuse of discretion undertakes a heavy burden. The abuse of discretion standard is intended to constrain appellate review and implies "less intense appellate review and, therefore, less likelihood of reversal." . . . As a general principle, an appellate court will not reverse a decision that lies within the discretion of the trial court unless it affirmatively appears that the lower court's decision was against logic or reasoning and caused injustice to the complaining party. . . . The fact that a decision is discretionary with a trial court necessarily implies that the trial court has a choice of alternatives among a range of acceptable ones; the reviewing court's job is to determine whether the trial court's decision is within the range of acceptable alternatives, given the applicable legal principles and the evidence in the case.

*Looper*, 2000 Tenn. App. LEXIS 233, at *9-*10 (citations omitted). Thus, the trial court's decision should not be reversed unless it is outside "the range of acceptable alternatives." *Id*. at *10.

In this appeal, Dr. Craig argues, *inter alia*, that the plaintiffs are not entitled to relief under Rule 60.02(4) or (5), because this case does not present any of the narrow circumstances under which relief can be granted pursuant to those provisions. Dr. Craig maintains that the circumstances in which the plaintiffs find themselves are the result of their own deliberate choices and calculated decisions. Dr. Craig also argues that the plaintiffs failed to file the motion for relief under Rule 60.02 within a reasonable time. Therefore, Dr. Craig contends that the trial court abused its discretion in setting aside the order of summary judgment.

Under subsection (4) of Rule 60.02, a party may be entitled to relief if "the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective application." Subsection (4) is inapplicable in this case because none of the limited circumstances stated in that subsection are applicable. Therefore, reliance on subsection (4) is of no avail to the plaintiffs. *See White v. Armstrong*, No. 01A01-9712-JV-00735, 1999 Tenn. App. LEXIS 50, at *9 (Tenn. Ct. App. Jan. 27, 1999) (reasoning that subsection (4) "applies to judgments that have prospective affect [sic], not to those that remedy past wrongs").

We next examine the trial court's grant of relief under subsection (5) of Rule 60.02. Subsection (5) states that the trial court may set aside a final judgment for "any other reason justifying relief from the operation of the judgment." Tenn. R. Civ. P. 60.02(5). The language of subsection (5) is "open-ended and leaves to the courts the task of interpretation." *Underwood v. Zurich Ins. Co.*, 854 S.W.2d 94, 97 (Tenn. 1993). However, the standard for relief under that subsection is "even more demanding than those applicable to the other grounds for Rule 60.02 relief." *Smith v. Haley*, No. E2000-001203-COA-R3-CV, 2001 Tenn. App. LEXIS 136 (March 2, 2001). The provision should be invoked only in "cases of overwhelming importance, or those involving extraordinary circumstances or extreme hardship." *Underwood*, 854 S.W.2d at 97; *see also Federated Ins. Co. v. Lethcoe*, 18 S.W.3d 621, 624 (Tenn. 2000). Relief under subsection (5) should not be granted to relieve a party from "free, calculated, and deliberate choices he or she has

made." *See Day*, 931 S.W.2d at 939 (citing *Banks v. Dement Constr. Co.* 817 S.W.2d 16, 19 (Tenn. 1991)).

Subsection (5) of Rule 60.02 was discussed in *Thompson v. Firemen's Fund Ins. Co.*, 798 S.W.2d 235, 238 (Tenn. 1990). In *Thompson*, the Court stated that "Rule 60.02 acts as an escape valve from possible inequity that might otherwise arise from the unrelenting imposition of the principle of finality imbedded in our procedural rules." *Thompson*, 798 S.W.2d at 238. In *Toney v. Mueller Co.* 810 S.W.2d 145 (Tenn. 1991), the Court observed "[b]ecause of the importance of this 'principle of finality,' the 'escape valve' should not be easily opened." *Toney*, 810 S.W.2d at 146.

As we have indicated, the trial court in this case found that the plaintiffs were entitled to relief under the "any other reason" subsection of Rule 60.02 because of the "existing extraordinary circumstances" of this case. Judge Morgan recognized that Dr. Craig, Mr. Bowman, Dr. Hockaday and Dr. O'Brien were all represented by the same attorney. He noted that Dr. Craig, in his deposition, took the position that he was not responsible for Plunk's care following surgery, except for her orthopedic care. Judge Morgan observed, "Counsel for the Defendants argued this position at the hearing on the motion for summary judgment stating that Dr. Craig was not responsible for [Plunk's] care following her surgery." He then noted that, in their depositions, nurse Bowman and Dr. Hockaday asserted that Dr. Craig had responsibility for Plunk's care following her surgery. Judge Morgan stated: "This is in direct contradiction to Dr. Craig's testimony at his deposition and part of the arguments of counsel made in support of the motion for summary judgment which the Court relied on in the granting of the motion for summary judgment on behalf of Dr. Craig, this having been heard by Judge Whit Lafon." The trial court found these to be extraordinary circumstances which justified an award of relief under Rule 60.02.

We must determine whether the trial court abused its discretion in determining that this case presents "extraordinary circumstances" sufficient to warrant relief from judgment under Rule 60.02. We are mindful that the "escape valve" of rule 60.02(5) should not easily be opened, *Toney*, 810 S.W.2d at 146, but the trial court is at liberty to use that provision to remedy "possible inequity that might otherwise arise from the unrelenting position of the principle of finality." *Thompson*, 798 S.W.2d at 238. For example, in *Brown v. Consolidation Coal Co.*, 518 S.W.2d 234 (Tenn. 1974), the Tennessee Supreme Court affirmed the trial court's order grant of relief under Rule 60.02(5) to an employer in a workers' compensation case when it was shown that the order used the wrong compensation rate in computing the weekly payment from the employer to the employee. *See Brown*, 518 S.W.2d at 238. The Court found that the award of the correct weekly compensation rate was "of such overriding importance to employer and employee alike, that, in those cases where there is no dispute as to the date controlling the compensation rates, authority is vested by Rule 60.02(5) for the correction of error therein . . . ." *Id.* In *United States v. Cirami*, 563 F.2d 26 (2d Cir. 1977), the federal appellate court held that relief under Federal Rule of Procedure 60(b)(6), which is identical to Rule 60.02(5) of the Tennessee Rules, was warranted in a case in which the defendants' attorney suffered from a mental illness and disappeared unexpectedly, preventing the defendants from filing a response to a summary judgment motion. *Cirami*, 563 F.2d at 31-32. The parties

seeking relief in *Cirami* did not know that a default judgment had been entered against them until they hired a new attorney. *Id.* The federal court stated:

> Where one timely seeking Rule 60(b)(6) relief from a default judgment can make out a strong case that he had a meritorious defense which could have been asserted but for a truly extraordinary turn of events . . . it is appropriate to vacate the judgment so that the merits of his case can be considered.

*Id.* at 35.

On the other hand, in *Smith v. Haley*, No. E2000-001203-COA-R3-CV, 2001 Tenn. App. LEXIS 136 (Tenn. Ct. App. March 2, 2001), the Court found that the trial court did not abuse its discretion in denying relief under subsection (5) in a medical malpractice action. The trial court granted the defendant physician summary judgment because the plaintiffs had failed to submit sufficient expert medical evidence to support their case. The trial court had agreed to reconsider its summary judgment order when the plaintiffs submitted an expert's affidavit in support of the plaintiffs' position. Later, however, the plaintiffs' new expert refused to give a deposition, so the plaintiffs moved to strike his affidavit. The trial court struck the affidavit and reinstated its original order dismissing the case. The plaintiffs sought relief from the order under Rule 60.02(5), arguing that they could not foresee that the expert would later become unwilling to testify. They contended that this situation constituted extraordinary circumstances sufficient to obtain relief from the dismissal under Rule 60.02(5). The trial court held that the plaintiffs' lack of diligence in failing to secure expert testimony was not sufficient to justify Rule 60.02(5) relief from judgment. *Id.* at *8. On appeal, this Court found that the trial court had not abused its discretion, noting the well-established rule that subsection (5) is not intended to relieve a party from his own free, calculated, and deliberate choices. *Id.* at *21-*22 (citing *Federated Ins. Co.*, 18 S.W.3d at 625). The Court observed that "[a] party remains under a duty to take legal steps to protect his or her own interests." *Id.* at *22.

Dr. Craig argues that the plaintiffs' ignorance of the contrary positions of Bowman and Dr. Hockaday resulted from their own lack of diligence in conducting discovery prior to the trial court's hearing on the motion for summary judgment, and that Rule 60.02(5) was not intended to relieve the plaintiffs from their "free, calculated, and deliberate choices" not to pursue further discovery. *See Day*, 931 S.W.2d at 939. It is noteworthy that defense counsel actively resisted the plaintiffs taking discovery from the remaining defendants prior to the resolution of Dr. Craig's motion for summary judgment. It is certainly true that the plaintiffs could have sought an order from the trial court compelling the depositions of the other defendants prior to the hearing on Dr. Craig's motion for summary judgment, and that counsel for the plaintiffs failed to do so. This must be evaluated, however, against the backdrop of the actions of defense counsel.

At the time of the first hearing on Dr. Craig's motion for summary judgment, Drs. Hockaday and O'Brien were not yet defendants in the lawsuit. Counsel for Dr. Craig also represented nurse Bowman. Both the trial judge and counsel for the plaintiffs could reasonably assume that defense counsel had knowledge of the basic positions of both clients, to know whether their positions were

consistent or in conflict. Indeed, at the first hearing, the trial court attempted to clarify the situation, assuring itself that defense counsel represented both Bowman and Dr. Craig and asking whether it was counsel's position that as "between and Craig, if somebody did it, it was Bowman and not Craig." At that point, defense counsel agreed with that statement of the parties' positions, presumably the positions of both Bowman and Dr. Craig.

At the second hearing on Dr. Craig's motion for summary judgment, which occurred after Dr. Craig's deposition was taken, the plaintiffs conceded that Dr. Craig did not cause the perforation injury to Plunk. They argued, however, that Dr. Craig had the responsibility of managing Plunk's post-operative care, and that his response to her post-operative complaints of throat problems fell below the standard of care for an admitting physician following the operation. At this hearing, Drs. Hockaday and O'Brien were made defendants without objection, and defense counsel for Dr. Craig and nurse Bowman also represented Dr. Hockaday and Dr. O'Brien. Again, both the trial court and counsel for the plaintiffs could reasonably assume that defense counsel was sufficiently knowledgeable of the positions of his multiple clients to know if their positions were in conflict. Nevertheless, defense counsel asserted without qualification that "the orthopaedic aspect of this case" was "Dr. Craig's only responsibility." From this, it was not unreasonable for the trial court, and for the plaintiffs' counsel, to assume that all of the clients represented by defense counsel for Dr. Craig were not in conflict on this point. The trial judge at that time, Judge Lafon, clearly relied on this, finding the plaintiffs' affidavit in response to Dr. Craig's motion for summary judgment insufficient because it "made no comment as in regards to the orthopaedic standards." Under these circumstances, we must conclude that the plaintiffs' failure to seek a court order compelling the depositions of the other defendants at an earlier time was not the result of "mere negligence" or lack of diligence. *See*, *e.g.*, *Klapprott v. United States*, 335 U.S. 601, 613-14, *modified at* 336 U.S. 942 (1949) (granting relief because the defendant's failure to defend resulted from the disappearance of his attorney, not the defendant's own negligence).

Dr. Craig argues that the Rule 60.02 motion was untimely, filed approximately two years after the grant of summary judgment in favor of Dr. Craig. However, the motion was filed within a reasonable time after the depositions of Bowman and Dr. Hockaday, in which counsel for the plaintiffs learned that Bowman and Dr. Hockaday took positions in direct conflict with Dr. Craig's assertions regarding his responsibility for Plunk's post-operative non-orthopedic care. Under these circumstances, the Rule 60.02 motion was not untimely.

Given the high standard required for relief under Rule 60.02(5), this case presents a close question on whether such relief is warranted.[4] However, when a decision lies within the sound discretion of the trial court, appellate courts are reluctant to disturb the trial court's decision unless it is "against logic or reasoning and caused injustice to the complaining party." *Looper*, 2000 Tenn. App. LEXIS 233, at *9-*10. In light of this standard of review, and considering all of the unusual

_____

[4]The trial judge, in his order granting permission for interlocutory appeal of this issue, acknowledged that "the issue of whether the Plaintiffs' Rule 60 Motion should have been granted is not a clear cut issue."

circumstances in this case, we must conclude that the trial court did not abuse its discretion in setting aside the prior order of summary judgment in favor of Dr. Craig.

Accordingly, the decision of the trial court is affirmed. Costs on appeal are taxed to the Appellant, James T. Craig, Jr., M.D., and his surety, for which execution may issue if necessary.

_____
HOLLY KIRBY LILLARD, JUDGE