**UNITED STATES of America,**

v.

**Salvatore CIRAMI, et al., Defendants.**

**No. 73 C 274.**

United States District Court,
E. D. New York.

Dec. 8, 1981.

Edward R. Korman, U. S. Atty., E.D. N.Y., Brooklyn, N. Y., John F. Murray, Acting Asst. Atty. Gen., Edward J. Snyder and Thomas M. Lawler, Jr., Tax Div., Dept. of Justice, Washington, D. C., for plaintiff.

Juris G. Cederbaums, Wallace Musoff, New York City, for defendants.

## MEMORANDUM AND ORDER

PLATT, District Judge.

This is an extraordinary case, not by reason of anything the defendants have shown but because of their adroitness in avoiding payment of tax deficiencies of $153,087.34 plus a penalty of $19,570.91 assessed against them for the years 1961–63.[1] To appreciate the skill of defendants in this respect, one must first read the Court of Appeals opinions[2] reported at 535 F.2d 736 (2nd Cir. 1976) and 563 F.2d 26 (2nd Cir. 1977) (familiarity with which is assumed here) and the record established before this Court in the evidentiary hearing on remand.

Following such hearing, this Court finds that the defendants have failed to show, under Rule 60(b)(6), "exceptional circumstances" or "extreme hardship."[3] With respect to the "exceptional circumstances" test, in the first of its two opinions on the defendants' present motion the Court of Appeals told the defendants what one must do to sustain a motion of this sort in the following words (535 F.2d at 741):

> The case before us is clearly distinguishable. There is not the unusual circumstance of attorney disappearance, and there is no allegation of any effort to contact the former attorney to ascertain the status of the litigation at any point or even to provide the court below with any explanation for his failure to oppose the motion for summary judgment. *L. P. Steuart, Inc. v. Matthews,* [329 F.2d 234] *supra,* is equally inapposite. In that case former counsel's affidavit revealed that

---

1. While the government has been accruing interest on this amount, the inflation rate for the past 20 years has reduced the same from a substantial to a relatively small amount.

2. The history of this action is set forth in detail in these opinions and will not be repeated here.

3. There was no evidence whatever which even tended to show that the defendants were not in a position to pay the taxes. Indeed, if any-

thing, the evidence tended to show just the opposite. (C–II.24–27).

The transcript references are based on the following:

C– I – Mr. Cirami's testimony on May 22, 1981
C–II – Mr. Cirami's      "      on May 29, 1981
N    – Mr. Newman's testimony on June 19, 1981
M– I – Mr. Morrow's      "     ' on July 10, 1981
M–II – Mr. Morrow's      "       on July 13, 1981
A    – separately bound joint appendix submitted to the Court of Appeals.

at the time of his default he had been beset by personal problems, including the death of his parents and the serious illness of his wife. Moreover, his client's affidavit noted that he had made numerous inquiries of his former counsel who had either refused to answer or had assured him that the case was proceeding and would soon be settled. Judge Edgerton found that Rule 60(b)(6) was broad enough to permit relief when "personal problems of counsel cause him grossly to neglect a diligent client's case and mislead the client." 329 F.2d at 235. (footnote omitted).

The defendants appear to have attempted to comply with the factors set forth in the Court of Appeals' discussion by pointing up "personal problems" of "former counsel" in the second of their two motions.

The difficulty here, however, with defendants' new motion is that whatever problems Peter R. Newman, Esq., may or may not have had in the winter and spring of 1974 they were not the cause of the "no opposition" to the government's original partial summary judgment motion.

The record is clear that Mr. Newman was retained by the defendants in or about March 1973 "within a day or two days" of the time an answer to the government's complaint was due to be filed in this case. (N. 23). Assuming, *arguendo*, that the defendants did not appreciate the fact that they needed to assemble and exhibit to the Internal Revenue Service records to substantiate the business expenses and deductions which they had claimed on their tax returns from a date of the assessment in or about 1966 to the date of Mr. Newman's retention—i.e., for seven years or more (and that is a big assumption in defendants' favor), they knew in March of 1973 that such documentation was needed because Mr. Newman told them so (N. 23–24, 30). Mr. Cirami told Mr. Newman to see his accountant, De Stefano, who he said knew where these documents were (N. 24–25, C–1, 90–91). Mr. Newman did so several times and finally Mr. De Stefano advised him that they were all lost (N. 27, 47–48).

Mr. Newman reported to Mr. Cirami that Mr. De Stefano had informed him that all the records were lost and Mr. Cirami then expressed to Mr. Newman that he had a very low opinion of Mr. De Stefano for losing the records (N. 30). The Court credits the foregoing testimony of Mr. Newman and his statements that despite repeated efforts and requests by him of Mr. De Stefano and Mr. Cirami, not one substantiating record was ever made available to him (N. 24, 27, 30). Mr. Newman's testimony in this respect was fully corroborated by government counsel William Morrow who testified that Mr. De Stefano told him he could not find any cancelled checks, invoices or receipts. (M–II.10–11).

During the ensuing nine-month period from March to December 1973 when the government made its motion for summary judgment, Mr. Newman scarcely acted like one who was not tending to his clients' business. Not only did he make repeated requests of Messrs. Cirami and De Stefano for the pertinent records but he made trips to Puerto Rico and Washington, argued and filed an affidavit in September in opposition to the government's motion to dismiss defendants' counterclaim and filed a brief in support thereof.

On December 28, 1973 the government made its motion for partial summary judgment with a return date of February 6, 1974. On the latter date [4] Mr. Newman appeared in Judge Bruchhausen's chambers and explained to the Judge's law clerk that the defendants had not been able to supply him with any books or records or any cancelled checks or receipts to substantiate their claimed deductions. He asked for more time to find such records and the law clerk after conferring with Judge Bruchhausen gave him two additional weeks, i.e., to February 15th and the government was given until March 15th to reply.

Between February 6th and March 1 Mr. Morrow conferred with Mr. Newman who said that he had not been able to obtain any records from the defendants.

4. Mr. Newman also attended a status conference on January 3, 1974.

The reason then for the lack of opposition to the government's motion was, not as defendant now claims, due to Mr. Newman's condition, but because of the defendants' failure to give him any records—not even one single document with which to oppose the motion.

Under the circumstances Judge Bruchhausen properly entered an order granting the government's motion, not on default, but on the ground that there was "no opposition" thereto.

The fantasy that Mr. Newman was unaware of what was happening in this case and that he had "constructively disappeared" is completely destroyed by the events which followed. Shortly after the entry of partial summary judgment in favor of the government on March 18–19, 1974, there was a status conference held in this Court before Judge Bruchhausen on April 10, 1974. (A–2). Mr. Newman attended this status conference (M–I.19) and was aware that the government's motion for partial summary judgment had been granted (M–I.19–21). The status conference was held to set a discovery and trial schedule on the fraudulent conveyance issue which was the only issue left in the lawsuit (M–I.19–21). Most significantly at that status conference Mr. Newman claimed he was "bound in" by the fact that Mr. Cirami had been convicted in a criminal trial for evasion of certain other taxes. Mr. Newman said that because of an appeal of that conviction, Mr. Cirami could not appear in this civil case for depositions or trial (Government Ex. 3). Therefore, at Mr. Newman's request, the status conference was adjourned until June 24, 1974 (Government Ex. 3, A–2). Again at the adjourned date for such status conference, to wit, on June 24th, Mr. Newman appeared and made a further request for a continuance because of Mr. Cirami's appeal from his criminal conviction (M–I.21–22).

Moreover, as must be clear from the facts found above, the defendants failed to show on the remand hearing that Mr. Newman was suffering from a mental disorder sufficient to affect his performance in this case.

It may well be that Mr. Newman failed to advise his client of the entry of the order for partial summary judgment. However, it appears quite clear that (i) he felt the matter was hopeless and (ii) he thought he should "buy time" for further discovery on the fraudulent conveyance issue on the strength of Mr. Cirami's conviction and appeal—a very sensible and logical thing to do under the circumstances.

Furthermore, Mr. Newman was not "seeing a psychiatrist during this period" (563 F.2d at 31). He had voluntarily discontinued seeing a psychologist in September 1971 —three years before the events recorded here. Moreover, the Bar Association records tend to show not that he had a mental disorder but that he negligently failed to do certain things. This, needless to say, did not constitute proof of negligence in this case.

The long and the short of this whole proceeding is that the defendants failed to show that any misconduct or "mental disorder" on the part of Mr. Newman was the cause of there being no opposition to the government's motion for partial summary judgment herein and accordingly, the defendants owe the government the sum of $153,087.34 plus $19,578.91 in penalties, plus a large amount in interest and should be required to pay the same forthwith. If the government wishes to pursue the fraudulent conveyance issue, it should communicate with Deputy Clerk Bruce Nims (212/330–7928) and arrange for a scheduling of a trial.

SO ORDERED.