In re BENHIL SHIRT SHOPS, INC.,
Debtor.

BENHIL SHIRT SHOPS,
INC., Appellant,

v.

LYNNS INC., Joe Norban Industries,
Inc., and Rudban Coats,
Inc., Appellees.

No. 87 CIV. 6010 (MJL).

United States District Court,
S.D. New York.

April 1, 1988.

Ballon, Stoll & Itzler, New York City, for appellant Benhil Shirt Shops, Inc.; by Ronald S. Itzler.

Reavis & McGrath, New York City, for appellees Lynns Inc., Joe Norban Industries, Inc., and Rudban Coats, Inc.; by Peter Lubitz.

## OPINION AND ORDER

LOWE, District Judge.

Debtor–Appellant Benhil Shirt Shops, Inc. ("Benhil") brought an adversary proceeding in the Bankruptcy Court of the

Southern District of New York against Appellees Lynns Inc., Joe Norban Industries, Inc., and Rudban Coats, Inc. (collectively, the "Defendants"). Benhil's claims arose out of a contract dispute with the Defendants concerning the assumption and assignment of a lease. The Bankruptcy Court granted Defendants' motion for summary judgment and dismissed Benhil's action. Benhil appealed but we dismissed the appeal because Benhil failed to timely file a brief and failed to oppose Defendants' motion to dismiss. Before us now is Benhil's Motion for Reconsideration of Order Dismissing Appeal ("Motion for Reconsideration"). For the reasons stated below we grant Benhil's motion and open the default judgment.

## BACKGROUND

Benhil is a New York corporation in the business of operating retail outlets for men's clothes. The Defendants are also in the clothing business. Prior to July 23, 1986 both Benhil and the Defendants were tenants in a shopping mall ("the Mall") in Massapequa, New York which is owned by Sunrise Mall Associates ("Sunrise").

On March 21, 1986 Benhil filed a petition for reorganization under Chapter 11 of the Bankruptcy Code. On July 15, 1986 Bankruptcy Court Judge Burton R. Lifland held a hearing to adjudicate the assumption and assignment of Benhil's lease at the Mall.

This hearing was held pursuant to 11 U.S.C. §§ 365(f)(2) and (b)(3). Section 365(f)(2) provides that a trustee[1] may assign an unexpired lease only after that lease has been assumed with the approval of the court. Section 365(b)(3) provides that before the assignment of an unexpired lease in a shopping center can be approved, adequate assurances of performance and compatibility must be shown to the court.

During the July 15 hearing the Defendants made the high bid of $250,000 for Benhil's lease. Benhil accepted the bid subject to the approval of the Bankruptcy Court pursuant to § 365. A further hearing was set for this matter on July 31.

Before the July 31 hearing, the Defendants withdrew their bid and Benhil was forced to surrender the lease to Sunrise for $150,000. On April 2, 1987 Benhil brought an adversary proceeding in Bankruptcy Court against the Defendants, claiming $100,000 damages for breach of contract. On May 29 the Defendants moved to dismiss the proceeding for failure to state a claim on which relief could be granted, and on June 22 the Bankruptcy Court entered an order dismissing Benhil's claim with prejudice. The Bankruptcy Court did not articulate its reasons for granting the Defendants' motion.

Benhil timely filed its Notice of Appeal to the District Court with the Bankruptcy Court on July 1, 1987. Benhil's next duty was to file its statement of issues for review on appeal (the "Issues Statement"). Bankruptcy Rule 8006 requires the Issues Statement to be filed and served on the opposing party within ten days after filing the notice of appeal. Benhil filed the statement on July 10, 1987. However, they failed to serve the Defendants with the statement until July 27, 1987.

After filing its Issues Statement Benhil's next duty was to file its brief "within 15 days after entry of the appeal on the docket pursuant to Rule 8007." Bankruptcy Rule 8009. The District Court entered the appeal on the docket on August 19, 1987. Benhil's appeal brief was therefore due on or before September 3, 1987. The Defendants, perhaps not fully understanding the rules, filed a motion to dismiss Benhil's appeal on August 24, 1987, i.e., more than one week before Benhil's appeal was actually due. In any event Benhil never filed its brief, and we dismissed Benhil's appeal on October 8, 1987, 82 B.R. 7.

On October 21, 1987 Benhil filed the instant Motion for Reconsideration (which we have treated as a motion for relief from a final judgment under Fed.R.Civ.P. 60(b)). Benhil's motion included an affidavit

---

**1.** Section 1107 of the Bankruptcy Code gives a debtor in possession virtually all of the powers of a trustee. Thus, the references to the trustee in § 365(f) necessarily include a debtor in possession. Since both parties refer to Benhil as a debtor in possession, we treat Benhil as such.

("Rodgers' Affidavit #1") in support signed by attorney Phillip Rodgers ("Rodgers"). In this affidavit, Rodgers, who had been handling Benhil's case for the firm of Ballon, Stoll & Itzler (the "Firm"), confesses to having made an "egregious error" in not timely moving for an extension of time in which to file Benhil's appeal. Rodgers alleges law office failure, and he urges this Court to allow Benhil to file its appeal brief. Rogers included the brief as an exhibit to the Motion for Reconsideration. Benhil's motion did not contain a memorandum of law in support of reconsideration, as required by Rule 3 of the Civil Rules for the United States District Courts for the Southern and Eastern Districts of New York ("Local Rule").

The Defendants opposed Benhil's Motion for Reconsideration, arguing 1) that Benhil failed to supply a memorandum of law in support of its motion, and 2) that Rodgers' Affidavit #1 fails to establish grounds for reconsideration under an excusable neglect theory.

On October 28, 1987 we received an eleven page "supplemental" affidavit from Rodgers ("Rodgers' Affidavit #2") in which he claimed that, for reasons he could not explain, he became confused and disoriented, and as a result failed to timely pursue Benhil's appeal. Rodgers also alluded to having had family problems. Rodgers' Affidavit #2 at 7.

On November 2, 1987 we received a memorandum of law from attorney Ronald S. Itzler ("Itzler") in support of Benhil's motion for reconsideration. Mr. Itzler is a name partner of the Firm. In this memorandum Itzler pleads excusable neglect and refers to the facts alleged in Rodgers' Affidavit #2.

After holding a conference on February 9, 1988 we ordered the parties to submit additional affidavits on two issues: 1) the merits of Benhil's underlying claim and, 2) the circumstances surrounding Rodgers' failure to timely file Benhil's appeal brief.

In response to our request for information regarding Rodgers, Arthur L. Stoll, also a name partner of the Firm submitted an affidavit ("the Stoll Affidavit"). The Stoll Affidavit details the events which occurred following the discovery by others at the Firm that a default had been entered in this case. Stoll states that despite the Firm's system of monitoring its attorneys, Rodgers' default went undiscovered because he lied about the disposition of the case to his supervisor, Itzler. Itzler did not learn of Rodgers' default until he was told of it by the Defendants' attorney, Mr. Lubitz, who did so as a courtesy. Rodgers Affidavit #2 at 7–8.

The Firm investigated the disposition of Rodgers' other cases and learned that he had conducted at least one other case in a manner similar to the Benhil case. Stoll Affidavit at 2–5.

Rodgers has since left the Firm, where he had been employed for six years. Rodgers has been a practicing attorney for over thirty years.

No medical affidavits have been submitted concerning Rodgers' condition.

## DISCUSSION

█ Fed.R.Civ.P. 60(b) states in relevant part:

the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect ... (6) any other reason justifying relief from the operation of the judgment.

Decisions under Fed.R.Civ.P. 60(b) are solidly within the equitable discretion of the court. A court must weigh the countervailing principles of deciding a claim on its merits and achieving a final result. *See* Wright & Miller, Federal Practice and Procedure: Civil § 2857.

█ We initially evaluate whether Benhil's appeal may be restored under Fed.R.Civ.P. 60(b)(1), which provides for relief for "mistake, inadvertence, surprise, or excusable neglect." The portion of Fed.R.Civ.P. 60(b)(1) most applicable here is "excusable neglect." In *In re Manning*, 4 B.C.D. 304 (Bankr.D.Conn.1978) excusable neglect was defined as "the failure to timely perform a duty due to circumstances which were be-

yond the reasonable control of the person whose duty it was to perform." *Id.*, 4 B.C.D. at 305. A more illuminating definition is nowhere to be found, but there is a consensus that gross carelessness or negligence will not suffice to excuse a defaulting attorney under this theory. The typical case in which relief is granted involves a reasonable miscalculation by counsel. Some courts have granted relief to attorneys who defaulted because they were too busy with other legal matters. Wright & Miller § 2858; *In re Figueroa*, 33 B.R. 298, 302 (Bankr.S.D.N.Y.1983) (failure must be something that could not have been prevented by diligence).

■ Other important considerations under Fed.R.Civ.P. 60(b)(1) include: 1) whether the default was wilful, 2) whether the moving party has a meritorious case, and 3) whether the court's decision would unduly prejudice either side. *Original Appalachian Artworks v. Yuil Intern.*, 105 F.R. D. 113, 115 (S.D.N.Y.1985); *In re Figueroa*, 33 B.R. at 301.

Upon the facts of this case relief for Benhil under 60(b)(1) would be inappropriate. None of the affidavits submitted on Benhil's behalf allege facts which, if believed, would support a finding of excusable neglect. There has been no allegation of miscalculation or of preoccupation with other legal matters.

■ Since we find Benhil ineligible for relief under Fed.R.Civ.P. 60(b)(1) we turn to Fed.R.Civ.P. 60(b)(6). Under this rule a party is entitled to relief for "any other reason justifying relief from the operation of the judgment." Relief under Fed.R.Civ. P. 60(b)(6) can only be granted for reasons other than those listed in Fed.R.Civ.P. 60(b)(1)–(5). Wright & Miller § 2864. The court in *United States v. Cirami*, 563 F.2d 26 (2nd Cir.1977), held that Fed.R.Civ.P. 60(b)(6) would apply

> where one timely seeking 60(b)(6) relief from a default judgment can make out a strong case that he had a meritorious defense which could have been asserted

but for a truly extraordinary turn of events not covered by the first five clauses of the rule and which brought about his default and resulted in substantial injustice to him, it is appropriate to vacate the judgment so that the merits of his case can be considered.

*Id.*, 563 F.2d at 35. In *Cirami*, the court remanded for an evidentiary hearing on the allegations made by the defendant's attorney who alleged that he was "suffering from a psychological disorder which led him to neglect almost completely his clients' business while at the same time assuring them that he was attending to it." *Id.*, 563 F.2d at 34.

■ The facts before us are very similar to those deemed appropriate grounds for relief under Fed.R.Civ.P. 60(b)(6) by the Second Circuit in *Cirami*.[2] Rodgers failed to perform his duties while at the same time concealing this from his clients and his superiors. Although we have been presented with no medical evidence or documentation that Rodgers was or is suffering from a psychological impairment or a physical illness, the lack of such information is not fatal to the present motion. Rodgers, an attorney with over thirty years experience, was with the Firm for six years. During those six years there was no indication that he was anything other than a competent attorney. It does not require medical expertise to know that when a competent veteran attorney suddenly fails to perform, and covers up his non-performance by lying to his clients and his colleagues, something is obviously wrong with him. There is no reason to demand medical proof when the facts speak for themselves.

Under *Cirami* it is not enough to show an "extraordinary turn of events." The movant must also satisfy the court that he has a meritorious case, that his default has resulted in substantial injustice to him, and that it would be appropriate to lift the default and hear the case on the merits. *Cirami*, 563 F.2d at 26, 35.

**2.** After the *Cirami* case was remanded, the district court found the actual facts to be different from those presented to the Second Circuit, and

not sufficient to warrant relief under Fed.R.Civ. P. 60(b)(6). 92 F.R.D. 483 (E.D.N.Y.1981).

Benhil has satisfied us that these elements exist. The underlying dispute involves a question of bankruptcy law which is unclear and deserves to be fully briefed by both parties. The question is whether, under 11 U.S.C. § 365, the high bidder for the assignment of an unexpired lease in a shopping center is bound by his bid pending the Bankruptcy Court's approval of the assumption and assignment of the lease. Section 365(f) requires a lease to be assumed with court approval before it can be assigned, while § 365(b) sets the criteria for court approval of the assignment of a shopping center lease.

Defendants cite cases in which lease assignments were disallowed because the leases were never assumed with court approval. While relevant, these cases are not directly on point. Benhil, as the debtor-in-possession, did not want to assume their lease unless they were sure they could successfully assign it. At the July 15, 1986 hearing the Defendants made the high bid for Benhil's lease, and in reliance on the Defendants' bid Benhil refused other, lower, bids. At this time, Defendants assert, neither party was bound since the court had yet to approve Benhil's assumption of the lease. Benhil argues that traditional contract principles should govern in a situation like this, and that both parties should be bound pending the court's statutorily mandated ruling.

The law is unclear on this issue. We find that Benhil has a meritorious good faith claim to pursue. We therefore order the judgment against Benhil to be lifted. Benhil is ordered to submit its brief on appeal within 30 days from the date of this opinion. The Defendants are ordered to file their brief within 60 days from the date of this opinion. Both parties should address the issue which we have highlighted in the preceding two paragraphs.

It Is So Ordered.