Claudine Claytor GAINES,
Plaintiff-Appellant,

v.

Homer David GAINES, Sr.,
Defendant-Appellee.

Court of Appeals of Tennessee,
Middle Section.

Feb. 29, 1980.

Certiorari Denied by Supreme Court
April 19, 1980.

Revised Opinion June 3, 1980.

Noble E. Pepper, Old Hickory, for plaintiff-appellant.

Phillip Robinson, Nashville, for defendant-appellee.

## OPINION

DROWOTA, Judge.

This appeal from a judgment of the Fourth Circuit Court of Davidson County presents the issue of whether, when no appeal was taken from a 1976 order of the same court modifying the support order contained in the 1975 decree granting the parties herein a divorce, appellant Claudine Claytor Gaines can now under T.R.C.P. 60.-02(5) challenge the 1976 modification order on the grounds that a support agreement entered into between the parties prior to their divorce did not merge into the divorce decree but remained a binding contract not subject to modification by the court.

The cause herein on appeal was heard on the petition of Homer David Gaines to reduce the amount of child support ordered by the court in the parties' divorce decree. Mr. Gaines filed this petition in April of 1978, after the court had awarded him custody of one of the parties' children, who had formerly been in the custody of appellant. Two years earlier, upon the remarriage of appellant, Mr. Gaines had successfully peti-

tioned the court for termination of alimony to appellant.

Appellant Claudine Gaines filed a counter-petition, claiming alternatively that she should, pursuant to T.R.C.P. 60.02(5), be relieved of the 1976 order terminating alimony (and reducing appellee's total payment to appellant from $600.00 to $475.00) because of a "contract" between the parties which made no reference to nor was limited to alimony and child support and wherein appellee agreed to pay appellant $600.00 per month "for living expenses;" or that if the court did not sustain the preceding position, it should increase appellee's child support payment from $475.00 to $700.00 because of a change of circumstances in that appellee's income had increased since the parties' divorce.

This case was tried on July 7, 1978, and on January 15, 1979, the trial court entered an order and decree wherein it dismissed the appellant's claim based upon an alleged contract and modified its previous order regarding child support as follows: the child support appellee was to pay appellant was "increased" to $150.00 per month per child until emancipated or until further order, and appellant was ordered to pay appellee $50.00 per month for the support of the one child in his custody. We note that the judgment did represent an increase in child support *per child* to appellant, however in real terms appellant suffered a decrease in the payments to her from $475.00 to $250.00. In 1978, one child died in an accident, one became emancipated upon reaching the age of eighteen (although she did remain at home), and, as has been indicated, one moved into her father's home. Thus appellant was, under the trial court's January 1979 order, to receive a total of $300.00 for the two children residing with her, which would further be reduced by the $50.00 she was to pay appellee each month for the child with him.

On February 14, 1979, appellant filed a motion to alter the judgment so as to enforce the aforementioned "contract" between the parties, averring in support of such motion that the "contract is of such a nature that neither the Legislature nor the Courts have any power to impair it," and that "rule 60 specifically authorizes the plaintiff to raise the issue raised in this litigation at any time." This motion was overruled by order entered May 22, 1979, wherein the court made specific findings that the agreement between the parties did not extend beyond the legal obligations of the petitioner-appellee, that the agreement therefore merged into the final decree of divorce and that the amount of support ordered by the court could be modified, that appellant's acquiescence in the termination of alimony in 1976 estopped her from claiming the agreement between the parties as a binding contract, and finally that appellant never gave up her right to participate in appellee's future earning capacity (which appellant had claimed was the consideration for the alleged "contract") because she maintained the right to petition the court for a modification of such payments due to any change in circumstances. The court also in this order granted appellant an appeal to this Court.

Appellant has filed one "assignment of error" with this Court: that the trial court erred in failing to hold that the pre-divorce agreement between the parties "was a judicially sanctioned contract that went *beyond* the obligations of alimony and child support, and that, therefore, it could not and did not merge into the final decree so as to be subject to alteration or adjustment by the court."

■ Before we reach the merits of the preceding issue, we shall first consider whether T.R.C.P. 60.02(5) "specifically [or otherwise] authorizes" appellant to raise the contract issue "at any time," as she has argued. Appellee has argued that appellant's failure to appeal the trial court's 1976 order terminating alimony estops her from seeking review of that decision over two years later.

Rule 60.02 provides as follows:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the follow-

ing reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective application; or (5) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1) and (2) not more than one year after the judgment, order or proceeding was entered or taken. . . .

We find that under the plain language of the rule, appellant did not timely seek relief from the 1976 order. We presume that appellant is seeking relief under the section (5) "any other reason" clause of the rule; however, appellant has given no reason justifying such relief except that appellee should be bound by the "contract" which he signed prior to the parties' divorce because the contract did not legally merge into the final divorce decree. This "reason" is a legal argument which should have been raised at the 1976 hearing on appellee's petition for termination of alimony. We do not see how the failure to so raise it at the appropriate time can be characterized as anything other than mistake, inadvertence or excusable neglect, the reasons for relief set out in T.R.C.P. 60.02(1). The time limit for seeking relief under this section of the rule is one year from entry of the order.

It is true that there are certain exceptions to the general principle which is derived from the language of the rule itself, this principle being that a party seeking the benefit of the "reasonable time" period for filing allowed under section (5) must show that his or her claim fits under section (5) *rather than* under sections (1) or (2); this Court has recognized these exceptions in an unreported opinion, *Loveday v. American Holding Corporation*, filed August 31, 1979.

One exception is limited to certain worker's compensation cases. In *Brown v. Consolidation Coal Co.*, 518 S.W.2d 234 (Tenn. 1974), an employer had filed a petition seeking correction of a judgment entered more than a year earlier, in which the amount of recovery due an injured employee under the Workmen's Compensation Act has been set at too high a rate. The rate should have been set according to the schedule in effect at the time of injury, and was instead set according to the schedule in effect at the time of diagnosis, which was made several years later. The difference was between $38.00 per week, limited to a total of $14,-000.00 and $47.00 per week, limited to a total of $18,000.00. The employer claimed it deserved relief under T.C.A. § 20–1513, that there was "a mistake apparent on the face of the record." However, Rule 60 had superseded § 20–1513 and thus the court had to determine whether the incorrect rate schedule was a result of a clerical mistake or an oversight, in which case it could be corrected at any time under Rule 60.01; or of mistake, inadvertence, etc., in which case the employer's claim would be time-barred under Rule 60.02(1), as the employee alleged; or finally, if it was a result of "any other reason justifying relief" under Rule 60.02(5), in which case the employer, having petitioned "within a reasonable time," deserved relief.

The court held that the error was not the result of a clerical mistake, and that a lack of evidence on the reason for the error "impeded [it in its] effort to determine whether the mistake was an oversight as contemplated in Rule 60.01 or a mistake, inadvertence, surprise or excusable neglect as contemplated in Rule 60.02." It therefore held that relief was available under Rule 60.02(5):

This Court [held] that the award of the correct workmen's compensation rates applicable *to any given suit under said Act* is of such *overriding importance* to employer and employee alike, that, *in those cases where there is no dispute as to the date controlling the compensation rates,* authority is vested by Rule 60.02(5) for the correction of error therein on motion made within a reasonable time and not

limited to one year. Under the circumstances of this case, we find that employer's petition was brought within a reasonable time. (emphasis added)

*Brown, supra* at 238.

Besides limiting its holding to certain narrowly defined worker's compensation cases, the court in *Brown* clearly intimates that "any other reason" under Rule 60.02(5) is to be defined as a reason of "overriding importance." With all due respect and consideration for appellant's individual circumstances, we do not find hers to be a case of "overriding importance" to anyone other than herself.

Another exception to the general rule comes from federal law on Federal Rule of Civil Procedure 60(b). This law supports the "overriding importance" definition suggested by the *Brown* holding.

In *Klapprott v. United States*, 335 U.S. 601, 69 S.Ct. 384, 93 L.Ed. 266, *modified* 336 U.S. 942, 69 S.Ct. 398, 93 L.Ed. 1099 (1949), the United States had successfully petitioned to set aside a state court's judgment granting naturalization to Mr. Klapprott and to cancel his certificate of naturalization. Klapprott was incarcerated on other criminal charges shortly after this action was brought and never answered the complaint. A default judgment was entered against him. In response to his petition to have this judgment set aside four years later, the government argued that his only ground for relief under Rule 60(b) of the Federal Rules of Civil Procedure was neglect on his part and that his action was therefore time-barred. The Supreme Court found that his situation was "extraordinary" and could not fairly or logically be classified as mere "neglect" on his part. The court stated that "the undenied facts . . . reveal far more than a failure to defend the denaturalization charges due to inadvertence, indifference or careless disregard of consequences." It held that therefore his prayer for relief should "not be considered only under the excusable neglect, but also under the 'other reason' clause of 60(b)." *Id.* 69 S.Ct. at 389–390.

Another federal case recognizing the "extraordinary situation" exception is *United States v. Cirami*, 563 F.2d 26 (2d Cir. 1977). The "extraordinary circumstances" held to justify considering relief under the "other reason" clause of F.R.C.P. 60(b) in *Cirami* were that the petitioners' former attorney, who had allowed the default judgment in that case, had "constructively disappeared" because of a mental illness, and this was the reason for the default. *Id.* at 34. His "constructive disappearance" had made it impossible for his clients to locate him and had made excusable their failure to do so, and his mental illness made his failure to appear the result of more than mere neglect. *Id.* at 35. If the reason had been "mere" neglect, it would have come properly within one of the clauses requiring filing within one year, and the "other reason" clause would not have been available to the petitioners as a means to avoid the one-year limitation. *Id.* at 32. The court noted that a "proper case" for relief under the "other reason" clause is "only one of 'extraordinary circumstances' . . . or 'extreme hardship' . . . ." *Id.* (citations omitted).

We find no extraordinary circumstances or extreme hardship in this case which place it in this latter exception. In the first place, although we do not rest our holding on the theory of estoppel, appellee's argument in that regard has some merit. Surely, especially where the claim for relief is based upon arguments of "fairness," as this one is in large part, considerations of equity as well support the principle that court rulings must become final at some point so that parties may rely upon them. Not having challenged the 1976 order terminating her alimony until this action was brought, and not having offered any particular reason for her failure to do so, appellant has shown us no extraordinary circumstance or extreme hardship which would outweigh appellee's right to rely on the 1976 order which released him from his legal obligation to pay support, or alimony, to his former wife, and on appellant's apparent acquiescence in the court's action.

█ Furthermore, and more importantly, we do not find appellant's arguments in regard to the merits of the contract issue to be valid. Appellant asserts that the "offer" in the alleged contract is "totally unrestricted," and that the consideration for the $600.00 per month appellee was to pay appellant was the giving up of appellant's right to share in the earning capacity of appellee. From these two statements, and others regarding the negotiation process between the parties incident to the contract, appellant argues that the contract went beyond the legal obligations of the appellee and thus did not merge into the divorce decree. Curiously, we note statements in appellant's brief in which she avers that the $600.00 "included child support [and] alimony," and that the contract is enforceable "except in the two explicit areas of alimony and child support," but does not specify how much of the $600.00, which is the total amount per month that was to be paid, was for alimony, how much was for child support, and how much was to be considered payment above and beyond these obligations.

In any event, the offer as stated in the written agreement between the parties stated that the $600.00 was "for living expenses." Although appellant claims that in the negotiations appellee wanted to provide that the payments would end if appellant remarried, but that appellant refused to include this provision in the agreement, it was *not* stated in the agreement that payments would *continue* after remarriage by appellant, nor was it stated that the payments would continue beyond the majority of the parties' children.

The law in Tennessee is that when a court incorporates a property settlement agreement into a divorce decree, the agreement becomes merged into the decree and loses its contractual nature, except that an agreement "on matters outside the scope of the legal duty of child support during minority, or alimony in futuro over which the court also has continuing statutory power to modify, retains its contractual nature, although included in the decree of the court, and is enforceable in the same man-

ner as other contracts." *Blackburn v. Blackburn,* 526 S.W.2d 463, 465 (Tenn.1975). The court in *Blackburn* was concerned with one provision of the pre-divorce property agreement which provided that the father would pay a certain amount of child support for each child until each child reached the age of 21. At the time of the agreement and divorce, the age of majority was 21. Later, after the age was changed by statute to 18, the father ceased paying support for a child who turned 18. The court held that the relevant provision of the agreement did not go beyond the scope of the father's legal obligations at the time the agreement was entered into, and that it thus became merged into the divorce decree and was not enforceable as a contractual provision.

The Supreme Court had earlier, in *Penland v. Penland,* 521 S.W.2d 222 (Tenn. 1975), held that an agreement by a father to pay all the educational expenses of his children beyond high school, which, "being without any limitation, . . . necessarily envisioned continuance of the obligation beyond age 21," was a "contractual obligation outside the scope of the legal duty of support during minority." *Penland, supra* at 224–225.

This Court, in *Jones v. Jones,* 503 S.W.2d 924 (Tenn.App.1973), has held that an agreement by a father to support his children until age 22 subject to the contingency that they continue to live with the mother, which agreement was entered into when the age of majority was still 21, went beyond the legal duty of the father and was an enforceable contractual provision. *Jones* and *Penland* are the only two reported Tennessee cases of which we are aware in which courts have held provisions in support agreements to be outside the merger rule stated by the court in *Blackburn, supra.*

Appellant here has pointed to no specific provision in her alleged contract with her ex-husband wherein he specifically agreed to obligate himself beyond the scope of his legal duty of child support or of alimony. The "contract" stated that the $600.00 was

"for living expenses" as determined by an "attached budget," which is not before us. Appellant has not alleged that any particular part of the "budget" contained a provision going beyond what is normally understood to be covered by child support and alimony. The lack of a time limit for the payments does not support appellant's arguments that they were meant to continue "so long as [both parties] shall live." Indeed, it might be said that the "contract" could never be binding since the terms are not sufficiently definite or certain.

Appellant's argument that, as consideration for appellee's agreement to pay her $600.00 per month until she dies, she gave up "the only substantial asset" of the marriage, i. e. Mr. Gaines' earning capacity, which "consideration" was not, we note, stated in the "contract," is likewise without merit. As the trial judge pointed out in his May 22, 1979, order, appellant gave up no right to participate in appellee's future earnings; she maintained the right to petition the court for an increase in alimony or child support because of any change in circumstances.

We appreciate from a reading of the evidence in this case that appellant's financial situation is apparently not a comfortable one, and that she perhaps has to struggle more than does her ex-husband to make ends meet. However, the proper theory under which to remedy any such problems she may have is, in her case, that of change of circumstances justifying an increase in child support. As we have indicated, she was granted an "increase" by the trial court, even though in practical terms the amount she is now entitled to receive is smaller than that which she received prior to this action. She has not appealed on this latter theory, probably because the amount of child support awarded is largely in the discretion of the trial judge, and the appellate courts do not ordinarily interfere with the exercise of such discretion.

In conclusion, we affirm the judgment of the trial court in this case, on two related grounds: the case is not a proper one for relief under T.R.C.P. 60.02(5), and appellant's contract theory has no merit under Tennessee law.

Affirmed.

SHRIVER, P. J., and LEWIS, J., concur.