# IN THE COURT OF APPEALS OF TENNESSEE, WESTERN SECTION
## AT JACKSON

_____

|  |  |  |
|---|---|---|
| **MARY HELEN PEARSON JOHNSON,** | ) | Gibson Juvenile No. 4981 |
|  | ) |  |
| Respondent/Appellee, | ) |  |
|  | ) |  |
| VS. | ) | C. A. NO. 02A01-9605-JV-00123 |
|  | ) |  |
| **LUTHER WILLIAM JOHNSON,** | ) |  |
|  | ) |  |
| Petitioner/Appellant. | ) |  |
|  | ) |  |

_____

From the Juvenile Court of Gibson County at Trenton.
**Honorable Ted Hunderup, Judge**

**FILED**

**Jan. 7, 1997**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

**Mitchell G. Tollison**,
HAWKS & TOLLISON, Humboldt, Tennessee
Attorney for Petitioner/Appellant.


**Sam J. Watridge**, Humboldt, Tennessee
Attorney for Respondent/Appellee.



OPINION FILED:

**REVERSED AND REMANDED**


                              **FARMER, J.**



**CRAWFORD, P.J., W.S.** : (Concurs)
**TOMLIN, Sr. J.** : (Concurs)

Appellant, Luther William Johnson, appeals from the judgment of the trial court denying his motion to set aside a consent order of paternity and support. The minor child in question, Andreyous Luther, was born on January 23, 1991 to the Appellee, Mary Helen Pearson Johnson (Mother). For reasons herein articulated, we reverse the judgment of the trial court and remand.

In February 1991, Mother filed a petition to establish paternity against Appellant. A consent order of paternity and support was subsequently entered by the Gibson County Juvenile Court on February 26, 1991. The order acknowledges Appellant as the natural father of the child and sets child support. It reads, "the [appellant] acknowledges that he is the natural father of the child, Andreyous Luther Johnson . . . ."[1]

On May 18, 1995, paternity testing established a 99.97% probability that John Jones was the child's natural father. Mother, thereafter, filed a petition to establish paternity and set support against Mr. Jones in the juvenile court. The court entered an order to this effect on July 11, 1995, declaring Jones the natural father and changing the child's surname to Jones. A separate order entered October 6, 1995 awarded child support.

In October 1995, Appellant filed a motion seeking to set aside the consent order which declared him the child's natural father on grounds of fraud. Appellant relied upon the paternity test results which were attached to the motion, stating: "John Jones [cannot] be excluded as the biological father of Andreyous Johnson. Based on the . . . genetic testing results, the combined paternity index is 3,988 to 1 and the probability of paternity is 99.97%, . . ." An amended motion included the orders from the juvenile court establishing Jones as the biological father and setting child support. In response, Mother asserted, *inter alia*, the affirmative defenses of judicial and collateral estoppel and *res judicata*.

Appellant propounded certain requests for admissions to Mother. They, along with Mother's responses, are as follows:

---

[1]The order of support was suspended in September 1991 when the parties began living together. They subsequently married in June 1992. Mother filed for divorce in September 1994.

1.  Please admit that Gene Proof Technologies performed a paternity test and determined that John Jones is the biological father of Andreyous Luther Johnson to a probability of 99.97%.

RESPONSE: Admitted that John Jones could not be excluded.

2.  Please admit that the attached exhibit A[2] is a true and accurate copy of the report on paternity tests from Gene Proof Technologies to Mr. Norman Helms.

RESPONSE: Admitted.

3.  Please admit that the defendant, Luther William Johnson, is not the biological father of Andreyous Luther Johnson.

RESPONSE: Admitted.

4.  Please admit that, prior to defendant signing a Consent Order of Paternity and Support, plaintiff informed him that he was the father of Andreyous Luther Johnson.

RESPONSE: Denied.[3]

The trial court dismissed Appellant's motion after determining that Appellant had failed to state a claim upon which relief could be granted; that the doctrines of *res judicata* and judicial estoppel applied in that Appellant had admitted in the February 5, 1991[4] consent order that he was the child's father; and that the allegations of fraud were not stated with particularity. Appellant appeals from this decision, presenting the following issues for our review:

1.  Whether the trial court erred in entering an Order of Dismissal of Petitioner's Motion and Amended Motion to Set Aside Consent Order on the basis of failure to state a claim upon which relief could be granted?

II.  Whether the trial court erred in entering an Order of Dismissal of Petitioner's Motion and Amended Motion to Set Aside Consent Order under the doctrines of Res Judicata and Judicial Estoppel?

III.  Whether the trial court erred in entering an Order of Dismissal of Petitioner's Motion and Amended Motion to Set Aside

---

[2]Exhibit A in the record is a copy of the paternity test results hereinabove detailed.

[3]We note that the responses to the requests for admissions are unsigned. The record, however, includes a certificate of service, signed by counsel for Mother, certifying that a copy of "Plaintiff's Responses" was mailed to counsel for Appellant. We are satisfied that the responses are those of Mother and find that the signed certificate of service is sufficient for purposes of Rule 26.07 T.R.C.P., this rule being applicable hereto pursuant to Rule 1(b) of the Tennessee Rules of Juvenile Procedure.

[4]As herein noted, the consent order was not entered until February 26, 1991.

Consent Order on the basis that Petitioner had not alleged fraud with particularity?

IV. Whether there can be two (2) orders in the same court establishing two (2) different people as fathers of the same minor child and requiring those two (2) persons to be obligated to pay child support on the same minor child?

Appellee raises two additional issues:

I. May this Court grant relief when there was no evidence presented in the Trial Court.

II. If an appeal is filed from a Trial Court ruling where the appellant presented no evidence, is that appeal frivolous and should damages, attorney fees, and other relief be awarded Appellee.

Relief from a final judgment may be granted to a party for reasons including the following as set forth under Rule 60.02 T.R.C.P.: "(1) mistake, inadvertence, surprise or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; . . . or (5) any other reason justifying relief from the operation of the judgment." Under the Rule, relief pursuant to sections (1) and (2) must be sought not more than one year after the judgment. As Appellant's motion to set aside was filed outside this one year period, the only means of relief available to him is that as stated in section (5).

At the outset, we acknowledge the very narrow construction given the exception in section (5) by the courts of this state. *E.g., Underwood v. Zurich Ins. Co.*, 854 S.W.2d 94, 97 (Tenn. 1993); *Tyler v. Tyler*, 671 S.W.2d 492, 495 (Tenn. App. 1984). Generally, its application has been limited to certain workers' compensation cases and cases brought under federal law involving "extraordinary circumstances or extreme hardship." *Banks v. Dement Constr. Co.*, 817 S.W.2d 16, 18 (Tenn. 1991); *Tyler*, 671 S.W.2d at 495; *Gaines v. Gaines*, 599 S.W.2d 561 (Tenn. App. 1980).

In *Tennessee Department of Human Services v. Johnson*, 1986 WL 1873 (Tenn. App. Feb. 11, 1986), a case similar to the present case, this Court acknowledges the two applications herein noted, finding them applicable to the particular facts before it. As in our case, the defendant in *Johnson* moved to set aside a consent order of paternity, pursuant to Rule 60 T.R.C.P., on grounds of fraud after paternity testing concluded that he was not the father of the minor child in

question. It was asserted that the defendant was induced to execute the consent order, in part, by fraudulent statements made by the plaintiff mother. Additional court ordered blood tests, involving the mother, likewise excluded the defendant as the child's father. **Johnson**, 1986 WL 1873 at *1-2. After a hearing, the trial court ruled that inasmuch as the defendant had failed to prove fraud,[5] the blood tests were inadmissible. The court found that the defendant had "freely and voluntarily" entered into the consent order, that he had been before the court on several occasions without raising the issue and that the eight year time span between the date of entry of the consent order and the filing of the petition to vacate and set aside operated to estop the defendant from denying paternity. **Id**. at *2.

In reversing the trial court's decision, this Court first examined the workers' compensation case of **Brown v. Consolidation Coal Co.**, 518 S.W.2d 234 (Tenn. 1974), which applied the "any other reason provision" in section (5) where an "overriding importance" existed, and then considered **Gaines v. Gaines**, 599 S.W.2d 561 (Tenn. App. 1980), wherein the "extraordinary circumstances exception" applied under federal law was discussed. The Court, speaking through Judge Tomlin, announced:

> Applying the principles enunciated in **Brown** and **Gaines** to the case at bar, we are of the opinion that the facts present both a case of "overriding importance" and also of "extraordinary circumstances of extreme hardship."
>
> . . . . The completed [blood] tests and their admissibility as evidence are governed by *T.C.A. Sec. 24-7-112*, as amended by the Public Acts of 1983:
>
> . . . .
>
> (b) Upon receiving the results of the tests and comparisons conducted pursuant to subsection (a) of this section, the court <u>shall</u> proceed as follows:
>
> (1) If the results of the tests and comparisons <u>exclude</u> the defendant as the father of the child, this evidence <u>shall be conclusive</u> evidence of non-paternity and the court <u>shall dismiss the proceeding</u>. (emphasis supplied).
>
> The trial court thus had before it, as have we, conclusive evidence, . . . that the defendant is not the father of the plaintiff's

---

[5]The mother testified that the defendant was the child's father and that she had told the truth when naming him as such. The defendant was not allowed to cross-examine the mother regarding the blood tests.

child. Applying the rationale of the ***Brown*** case, we are of the opinion that it is of overriding importance to the father, the mother, and the state, as well, that one conclusively established in law not to be the father of a child be not declared as the father of that child.

Next, applying the "extraordinary circumstances or extreme hardship" rule enunciated in ***Gaines***, the circumstances herein are certainly extraordinary. The pecuniary responsibility presently placed on this defendant by the orders of the Juvenile Court of Shelby County is one of extreme hardship. . . . we find that both extraordinary circumstances and extreme hardship place this case under the "any other reason" exception of Rule 60.02(5).

***Johnson***, 1986 WL 1873 at *4 (emphasis in original).

The reasoning set forth by the court in ***Johnson*** is compelling and we find equally applicable to the case at bar. Though unlike the defendant in ***Johnson,*** here, we have a second consent order establishing someone other than the appellant as this child's father. Moreover, we have Mother's admission that Appellant is not the biological father. We reiterate that "it is of overriding importance . . . that one conclusively established in law not to be the father of a child be not declared as the father of that child." Although seemingly oversimplified, these words lie at the heart of this matter.

The appellant is correct that as of the writing of this opinion there are, in effect, two orders from the juvenile court declaring two different individuals the natural father of this child. We are not persuaded by Mother's argument that some things in life simply are not fair or that Appellant is estopped to deny paternity because of his execution of the consent order. The record does not show that the appellant knew he was not this child's biological father at that time. We believe the circumstances shown here to exist are those for which Rule 60.02 was clearly designed. Finally, the issues raised by Mother are without merit as we find that the trial court had sufficient documentation before it, namely, Mother's own admissions, to make a ruling.

This young child has undoubtedly been harmed the most by this unfortunate situation. No child should experience life unsure of his parentage or be subject to, we suspect, ridicule stemming from such uncertainty. Nor should a mother be allowed to collect child support for her child from two individuals who have both been legally declared that child's natural father. Our

judicial system was not designed for such.

The judgment of the trial court is, accordingly, reversed and this cause remanded for any further proceedings necessary and herewith consistent. Costs are assessed against the appellee, for which execution may issue if necessary.

_____
FARMER, J.

_____
CRAWFORD, P.J., W.S. (Concurs)

_____
TOMLIN, Sr. J. (Concurs)