# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### March 7, 2001 Session

## DONNA JO RUSSELL (FREEMAN), ET AL vs. JOHN ROBERT RUSSELL

**A Direct Appeal from the Circuit Court for Sumner County.**
**No. 18543-C and 20233-C The Honorable Arthur McClellan, Judge.**

_____

### No. M2000-01101-COA-R3-CV - Filed July 31, 2001
### No. M2000-01127-COA-R3-CV

_____

On August 5, 1998, Donna Jo Russell Freeman filed a complaint for divorce against John Robert Russell. The parties entered into a Marital Dissolution Agreement ("MDA") and shortly thereafter the trial court entered a final decree of divorce on December 21, 1998. The MDA did not address the legal rights and responsibilities with regard to the two children (hereinafter referred collectively as "the minor children"). The children's biological father is Carl Robert Freeman. Donna Jo Russell and Carl Robert Freeman married on November 29, 1999. Subsequently, Carl Robert Freeman filed a petition to establish parentage of John and Josiah Russell. John Robert Russell filed a motion seeking temporary visitation rights of the minor children and a Rule 60.02 motion. The trial court denied John Robert Russell's temporary visitation rights and consolidated his Rule 60 motion with Carl Robert Freeman's parentage petition. On March 10, 2000, the Circuit Court of Sumner County granted Carl Robert Freeman's petition to establish parentage, effectively making him the father of the minor children. The trial court further denied John Robert Russell's Rule 60.02 motion. On April 24, 2000, John Robert Russell filed this appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

DON R. ASH, SP. J., delivered the opinion of the court, in which FARMER, J., and CRAWFORD, J joined.

John R. Phillips, Jr., for the appellant, John Robert Russell.

Joseph Y. Longmire, Jr., for the appellee, Donna Russell Freeman.

Bryce C. Ruth, Jr., for the appellee, Carl Robert Freeman.

## OPINION

I.

Donna Jo Russell Freeman ("Mrs. Freeman") and John Robert Russell ("Mr. Russell") were married in 1979. Following the birth of their third child on December 14, 1983, Mr.

Russell underwent a vasectomy.

During the marriage, Mrs. Freeman began an extra-marital affair with Carl Robert Freeman ("Mr. Freeman"). Consequently, Mrs. Freeman became pregnant in the later part of 1990. The first child ("child one") fathered by Mr. Freeman was born in September of 1991. Following the birth, Mrs. Freeman assured Mr. Russell that the child was his child. She also reminded him vasectomies are not 100% effective.

In late 1995 Mrs. Freeman became pregnant with a second child. The second child ("child two") fathered by Mr. Freeman was born in September 1996. Again, Mr. Russell confronted Mrs. Freeman about the birth of these two children ("minor children"). Her explanation was the same as before, that vasectomies are not 100% effective. Consequently, Mr. Russell treated the minor children as his own. However, it was not until Mr. Russell had problems with his reproductive organs did he find out he was not the father of the two minor children. Sadly, Mrs. Freeman admitted to Mr. Russell she and Mr. Freeman have been having an extra-marital affair, which ultimately led to the births of the minor children.

Upon learning of this information, Mr. Russell continued to live with Mrs. Freeman while attempting to work on the marriage. Their attempts at reconciliation faltered and shortly thereafter Mrs. Freeman filed for divorce in August of 1998 citing irreconcilable differences. During the divorce proceedings, Mr. Russell and Mrs. Freeman entered into a Marital Dissolution Agreement ("MDA"). Mr. Russell and Mrs. Freeman were both represented by attorneys during the divorce proceedings. The MDA provided provisions for Joel Thomas Russell, the only remaining minor child fathered by Mr. Russell. However, the MDA did not make provisions for the two minor children fathered by Mr. Freeman.

The trial court granted a divorce on December 21, 1998, to the parties based upon irreconcilable differences and awarded joint legal custody of Joel Thomas Russell with primary custody being awarded to the wife. Following the divorce, Mrs. Freeman allowed Mr. Russell visitation with the two minor children born of the relationship between Mr. Freeman and Mrs. Freeman with no support obligations. Thereafter, Mr. and Mrs. Freeman began living together with the two minor children. In September 1999, Mr. Russell's liberal visitation with the minor children was limited to Thursdays. On November 29, 1999, Mr. and Mrs. Freeman married.

On December 20, 1999, husband filed a Motion pursuant to T.R.C.P. 60.02 for relief from the December 21, 1998, final order of divorce. Shortly thereafter Mr. Russell's liberal visitation with the minor children was terminated. On January 21, 2000, Mr. Freeman, biological father of the children, filed a petition with the trial court to establish parentage of the minor children. In the January 21, 2000, pleading Mr. Freeman states that genetic testing had confirmed that he was the biological father of the minor children.

Subsequently, Mr. Russell filed a motion asking Circuit Court for temporary visitation with the minor children. On March 3, 2000, the trial court denied the husband's motion for temporary visitation with the minor children and consolidated Mr. Russell's Rule 60 motion with Mr. Freeman's petition to establish paternity. A hearing was held on March 10, 2000, regarding Mr. Russell's Rule 60 motion and Mr. Freeman's petition to establish paternity. After a hearing

on the matter, the trial court granted Mr. Freeman's petition to establish parentage and denied Mr. Russell's Rule 60.02 motion. On April 24, 2000, Mr. Russell filed notice of appeal citing that his constitutionally protected rights of parenthood have been impinged, that the doctrine of equitable estoppel operates to bar Mrs. Freeman from denying his paternity of the minor children, and that the trial court abused its discretion in not granting relief pursuant to Tenn.R.Civ.P. 60.02.

II.

The first issue to consider is whether T.C.A. § 36-2-304, as applied by the trial court, violated Mr. Russell's constitutionally protected rights of parenthood. The relevant portions of T.C.A. § 36-2-304 are as follows:

Presumption of parentage. – (a) A man is rebuttably presumed to be the father of a child if:

(1) He and the child's mother are married or have been married to each other and the child is born during the marriage or within three hundred (300) days after the marriage is terminated by death, annulment or declaration of invalidity, or divorce;

\*\*\*

(A) He has acknowledged his paternity of the child in writing filed under a putative father registry established by the department of children services, pursuant to § 36-2-318;

\*\*\*

(4) While the child is under the age of majority, he receives the child into his home and openly holds the child out as his natural child; or

(5) Genetic tests have been administered as provided in § 24-7-112, an exclusion has not occurred, and the test results show that a statistical probability of parentage of ninety-five percent (95%) or greater.

\*\*\*

(c) All prior presumptions of parentage established by the previous paternity and legitimization statutes and cases are abolished.

Recently in **Cihlar v. Crawford**, 2000 WL 1183068 *8 (Tenn. App. 2000), the court specifically addressed the constitutionality of the parentage statutes enacted by the legislature. The court identified five compelling governmental interests that give putative biological fathers a right to establish paternity of a child born to a married woman.[1] **See Id.** at *12. When asserting a claim of parentage, the biological father must assert "two essential ingredients." **Id. Cihlar** provides:

First, the procedure must comply with minimum procedural due process requirements which include adequate notice, an opportunity to present evidence, and a decision based on the evidence by an impartial trier-of-fact. Second, the procedure should enable the trier-of-fact to consider the level of commitment to parenthood that the presumptive father or fathers have demonstrated.

**Id.** at *12-13.

This case, like **Cihlar**, is a disagreement between two men who are presumptively the father of the two minor children. Mr. Russell is presumptively the minor children's father because he was married to Mrs. Freeman at the time they were conceived. In fact, Mrs. Freeman had made numerous representations to him that he was the father of the two minor children even after Mr. Russell underwent a vasectomy following the birth of his third child, Joel. **See** T.C.A. § 36-2-304(a)(1). However, genetic testing has confirmed that Mr. Freeman is also presumptively the minor children's father by a statistical probability of 95% or greater. **See** T.C.A. § 36-2-304 (a)(5). In addition to the genetic proof, Mr. And Mrs. Freeman have lived in a traditional family setting for more than two years with Mr. Freeman openly holding the minor children out as his natural children. Furthermore, Mr. Freeman consented in writing to be named the minor children's father on their birth certificates and requested the that their names be changed on the Parentage Petition he filed.

In order to resolve the issue of parentage, this court should take into consideration: (1) the stability of the child's current family environment; (2) the existence of the ongoing family unit; (3) the source or sources of the child's support; (4) the child's relationship with the presumptive father; and (5) the child's physical, mental and emotional needs. **Cihlar**, 2000 WL 1183068 at *13.

Donna Jo Russell Freeman married the biological father, Carl Robert Freeman, on November 29, 1999. Since the marriage they have lived in a traditional family atmosphere. Shortly following the marriage, Mr. And Mrs. Freeman decided it would be in the best interests of the minor children to sever their relationship with Mr. Russell due to the confusion surrounding Mr. Russell's claims that he was the father of the minor children.

Similar to **Cihlar**, this court finds that the "parent's interest and ability to provide a child monetary and parental support are relevant." **Id.** at *14. The weight of this consideration favors Mr. Freeman. Mr. Freeman provides and continues to provide child support to the minor children. Following the Freemans marriage and during Mr. Russell's periodic visitation with the minor children, Mr. Russell never provided child support for them. We do recognize that Mr. Russell provided support to the minor children during his marriage with Mrs. Freeman, however, the support ended with the MDA. The record clearly shows that Mr. Russell entered into the MDA knowing the agreement did not provide provisions regarding his visitation or child support obligations. We are convinced by this affirmative act that Mr. Russell waived any legal right he might have to the minor children. Consequently, we find the weight of the evidence overwhelmingly favors Mr. Freeman. Accordingly, the judgment of the trial court finding Mr. Freeman the father of John Lawrence Freeman and Josiah M. Freeman is affirmed.

III.

The second issue for this court to consider is whether the doctrine of equitable estoppel should operate to prevent Mr. and Mrs. Freeman from denying Mr. Russell's rights to the minor children. While estoppel doctrines are not favored under Tennessee law, the essential elements in proving a successful equitable estoppel claim is well settled. **Sturkie v. Bottoms**, 310 S.W.2d 451 (Tenn. 1958); **Callahan v. Town of Middleton**, 292 S.W.2d 501 (1954). The court in **Consumer Credit Union v. Hite**, 801 S.W.2d 822, 825 (Tenn. Ct. App. 1990), provided the essential elements to be proven:

> The essential elements of an equitable estoppel as related to the party estopped are said to be (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) Intention, or at least expectation that such conduct shall be acted upon by the other party; (3) Knowledge, actual or constructive of the real facts. As related to the party claiming the estoppel they are (1) Lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) Reliance upon the conduct of the party estopped; and (3) Action based thereon of such a character as to change his position prejudicially.

citing **Callahan**, 292 S.W.2d 501 (1954).

Here, Mr. Russell contends equitable estoppel applies in the instant case because Mrs. Freeman represented to him for several years that both minor children were fathered by him. Accordingly, Mr. Russell treated these children as his own for over five years and provided financial and emotional support to these children during that period of time. However, prior to the divorce action, Mr. Russell became aware that he was not the biological father of the children. During negotiations for a divorce settlement, both Mr. Russell and Mrs. Freeman acknowledged that the minor children were the biological children of Mr. Carl Freeman. Subsequently, they entered into a MDA. The MDA made no provision for visitation or support of the two minor children born by Mr. Freeman nor did the agreement make special provisions regarding potential legal rights Mr. Russell might have with the minor children. Mr. Russell asserts that he and Mrs. Freeman had a silent agreement allowing him visitation with the children. In the interim Mr. Russell visited with the children, but shortly thereafter the Freemans disallowed Mr. Russell visitation with the children. Mr. Russell failed to provide support to these children during this interim basis.

While Mr. Russell contends there was a silent agreement regarding visitation rights, we are of the opinion that something as important as visitation rights should have been specified in the MDA. Both of the parties were represented by separate attorneys during the course of the MDA. The MDA made no provisions for visitation or support regarding the minor children. These omissions are central to this issue because Mr. Russell effectively recognized that he was not the father of these two minor children, thus, waiving any claim to parentage he might have to the minor children by signing off on the MDA. Based on the above-mentioned facts, we are of the opinion that Mr. Russell's equitable estoppel claim has no merit.

IV.

The final issue for this court to consider on appeal is whether the trial court erred in ruling that Tenn.R.Civ.P. 60.02 was not a viable relief option for Mr. Russell. The scope of review on appeal is limited to whether the trial judge abused his discretion in granting or not granting the relief requested pursuant to Rule 60. **Banks v. Dement Const. Co., Inc.**, 817 S.W.2d 16, 18 (Tenn. 1991). The rule provides:

Rule 60.02 Mistakes; Inadvertence; Excusable Neglect; Fraud, etc.

On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding for the following reasons:

(1) mistake, inadvertence, surprise or excusable neglect;

(2) Fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;

\* \* \*

(5) any other reason justifying relief from the operation of the judgment.

The party moving for Rule 60 relief has the burden of proving that he is entitled to relief, and there must be proof of the basis on which relief is sought. **Federated Ins. Co. v. Lethcoe**, 18 S.W.3d 621, 623-624 (Tenn. 2000); **Banks**, 817 S.W.2d at 18.

The trial court in it's ruling denied the relief requested by Mr. Russell. In it's ruling, the trial court specifically found:

Mr. Russell testified that at the time of the entry of the contract and at the time of the approval of the Marital Dissolution Agreement and entry of the divorce by Judge Goodall, he was represented by counsel, he understood what was in the Marital Dissolution Agreement and he acknowledged to Mr. Longmire that there was no mistake, there was no adverse, there was no surprise, there was no neglect on his part, that he knew the contents. Conversely, he introduces parole evidence as it pertains to the entry of the MDA wherein he indicates that he was assured and Mrs. Freeman concurs that he was assured that he would be permitted certain visitation and to maintain a certain relationship with the two boys that are the subject matter of this motion.

The question that would arise at that point in an effort to do an analysis is whether or not that would give rise under 60.02(5) for the Court to grant him relief. The cases that I've read under 60.02(5) construe that section very narrowly, and frankly, I'm of the opinion that the cases I've read with this one would not fall within the parameters of 60.02(5).

6

We agree with the trial court's assessment. First, Mr. Russell testified that he was not surprised or mistaken, nor were any misrepresentations made to him when he entered the MDA. Clearly, Rule 60.02(1) would not be a viable option of relief for Mr. Russell. Next, Mr. Russell argues that Rule 60.02(2) would apply. The trial court had great concerns regarding Rule 60.02(2) as it applied to this case:

> What bothers me is that perhaps under 60.02(2), which was not plead, but there might be an argument that there was fraud in the inducement, based upon Mrs. Russell's assertion that he would be permitted continued contact with these boys.

While the trial court expressed some concerns regarding Rule 60.02, we do not think there was fraud in the inducement. The record reflects that Mr. Russell did exercise some form of visitation with the minor children for a small period of time following the divorce. However, soon thereafter Mrs. Freeman felt it was in the best interest of the children to terminate their relationship with Mr. Russell. Her reasoning for making this decision was based on the confusion it was causing the two children. Mrs. Freeman agrees that she allowed Mr. Russell visitation with the children, but not for a specific period of time. Further, Mr. Russell did not pay child support for the children while he was exercising visitation with them. During the settlement negotiations Mr. Russell was represented by counsel, however they failed to provide provisions in the MDA reflecting visitation or support. We cannot find a demonstration of fraud on behalf of Mrs. Freeman when she terminated Mr. Russell's periodic visitation privileges.

Lastly, Mr. Russell contends that relief should be granted based on Rule 60.02(5) catch-all provision. Courts have held that Rule 60.02(5) can only be raised in the most unique, exceptional or extraordinary circumstances. **NCNB Bank of North Carolina v. Thrailkill**, 856 S.W.2d 150 (Tenn. Ct. App. 1993); **Gaines v. Gaines**, 599 S.W.2d 561 (Tenn. Ct. App. 1980). Furthermore, courts construe Rule 60.02(5) narrowly due to the value of finality in judgments. **Id.**

Mr. Russell contends that Mr. and Mrs. Freeman actions caused him to forego defining his rights in the MDA, thus, making it a very unique, exceptional or extraordinary case. Construing Rule 60.02(5) narrowly, we cannot find that the circumstances surrounding this case are unique, exceptional or extraordinary. In fact, Mr. Russell freely entered into the MDA while represented by counsel. As important as visitation with these children seem to be to Mr. Russell he should have simply preserved any legal rights he might have with these children in the MDA. He failed to do so and by doing so we do not find this is a unique case for Rule 60.02(5) relief in lieu of Mr. Freeman being the biological father of these two minor children. Accordingly, we cannot find that the trial court abused its discretion in denying relief under Rule 60.02.

V.

For the reasons set forth above, the order of the trial court establishing parentage in favor of Mr. Freeman and the denial of Mr. Russell's Rule 60 motion is affirmed. In addition, we find

that Mr. Russell's equitable estoppel claim has no merit. Costs on appeal are assessed against Mr. Russell.

_____

DON R. ASH, SPECIAL JUDGE

## OPINION FOOTNOTES

[1] First, the State has an interest in eliminating uncertainty and confusion regarding a child's parentage. Second, the State has an interest in enforcing a biological father's obligation to support his children in order to prevent them from entering welfare rolls. Third, the State has a responsibility to eliminate disparate treatment between marital and non-marital children. Fourth, the State has an interest in protecting the interests of the biological fathers who have made, or prepared to make, a substantial personal investment in their relationship with their children. Fifth, the State has an interest in enabling children to ascertain the identity of their biological parents for medical or other health reasons. **Cihlar v. Crawford**, 2000 WL 1183068 *12 (Tenn. App. 2000).